## NATIONAL CITY BANK OF CLEVELAND, Plaintiff-Appellee, v CITIZENS BUILDING COMPANY OF CLEVELAND ET AL, Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20547.   Decided April 21st, 1947.

Thompson, Hine & Flory, Cleveland, for plaintiff-appellee.
Jones, Day, Cockley & Reavis, Cleveland, for defendants-appellants.

## OPINION

By HURD, P. J.

This is an appeal on questions of law from the court of common pleas of Cuyahoga county, wherein judgment was rendered against the defendant, The Citizens Building Company in the sum of $636,671.39 together with interest at the rate of 8% per annum from April 1, 1946 and a finding made that defendant, The Citizens Building Company had defaulted in the performance of its lease with the plaintiff, The National City Bank of Cleveland, successor trustee, by reason whereof the court ordered foreclosure of defendants' interest in the leasehold estate including its equity of redemption by provid-- ing that such leasehold estate should be sold pursuant to the provisions of §8623-120 GC. The judgment also provided for marshalling of liens on the leasehold estate according to their respective order of priority.

The National City Bank, Successor Trustee, under an Agreement and Declaration of Trust dated August 15, 1924 as

lessor of the premises known as the Citizens Building Company, brought an action against the defendant, The Citizens Building Company of Cleveland, the lessee of said building, for money, foreclosure and marshalling of liens and equitable relief. The common pleas court found that the plaintiff was the owner in fee of the premises known as the Citizens Building and that the defendant, The Citizens Building Company, the lessee of said building, was in default in the payment of rentals due under said lease in the amount of $636,671.39 plus interest at the rate of eight percent from April 1, 1946.

The defendant, The Citizens Building Company in its answer and cross-petition alleged that the original lease upon which foreclosure was sought had been modified and that all rentals due under such lease as modified had been paid by it to the plaintiff. It is further alleged that it had resumed and maintained for three consecutive quarters rental payments at the rate stipulated in the original lease and therefore prayed that, under the provisions of the Modification of said Lease, an accounting be had between plaintiff and defendant, that plaintiff's petition be dismissed and that defendant, The Citizens Building Company be reinstated in full control of the premises, the Citizens Building, and the rents, issues and profits thereof, subject, however, to the terms and conditions of the original lease.

The Cleveland Trust Company, Trustee for the First Mortgage Leasehold Six Percent Sinking Fund Gold Bonds of The Citizens Building Company, and Minnie S. Haas, one of the bond-holders of said Leasehold Bonds are also parties to this action as defendants. The common pleas court found that there was due The Cleveland Trust Company Trustee from The Citizens Building Company the sum of $2,448,240.00 with interest thereon at the rate of 6% from July 1, 1944, and that said The Cleveland Trust Company, Trustee, has a valid second lien upon the leasehold estate of The Citizens Building Company by virtue of the mortgage deed of trust from the Citizens Building Company to the Cleveland Trust Company, Trustee, dated January 1, 1931.

For convenience we shall hereinafter refer to the plaintiff appellee, The National City Bank of Cleveland, Successor Trustee, as "Trustee" and to the defendant appellant, The Citizens Building Company of Cleveland as the "Building Company."

The briefs of the parties indicate that the basic facts essential to determining the questions of law raised by this appeal are either admitted or are substantially uncontradicted.

The facts are as follows:

On June 25, 1923, The Union Trust Company of Cleveland, being the owner of the Citizens Building on Euclid Avenue, Cleveland, Ohio, leased said building to the Union Square Company as lessee for a term of ninety-nine years at a rental of $120,000 per year, payable in quarterly installments of $30,000 each upon the first day of January, April, July and October of each year. The lease contained the usual provisions as to termination in the event of default and required the lessee to pay all taxes and public charges upon the premises.

This lease was subsequently assigned by The Union Square Company as Lessee to the Building Company which took possession of the premises and has operated them as Lessee ever since. On or about January 1, 1931, the Building Company mortgaged its leasehold estate by Mortgage Deed of Trust to the Cleveland Trust Company, Trustee, also a defendant in this action. This Mortgage Deed of Trust secured an issue of $1,212,000 principal amount of First Mortgage Leasehold Six Percent Sinking Fund Gold Bonds of the Building Company which matured on January 1, 1946 and carried interest at the rate of six percent per annum. All of these bonds were sold to the public. As the Common Pleas Court found, there is now due and unpaid to The Cleveland Trust Company, Trustee for said Leasehold Bonds, the sum of $2,448,240 with interest at the rate of six percent per annum from July 1, 1944.

In the year 1924, The Union Trust Company, owner and lessor of the then Union Mortgage Building later known as the Citizens Building, issued an Agreement and Declaration of Trust dated August 15, 1924 by which it declared itself Trustee of the property and premises which were the subject of the above mentioned lease, to The Union Square Company described above. Pursuant to such agreement and Declaration of Trust, it issued Land Trust Certificates of Equitable Ownership in principal amount of $2,000,000.00 bearing interest at the rate of five and one-half percent per annum. Such Land Trust Certificates of Equitable Ownership were sold and widely distributed to the public and are still outstanding.

Prior to December 1, 1933, The Union Trust Company was taken over by the Superintendent of Banks of Ohio and the National City Bank of Cleveland was duly appointed Successor Trustee under the Agreement and Declaration of Trust dated August 25, 1924, described above. The National City Bank of Cleveland as Successor Trustee has been the lessor under the lease to the Building Company since that date.

On or about December 1, 1933, the Trustee and the Building Company by agreement modified the terms of the original lease by reducing the rent for the two year period from July 1, 1933 to June 30, 1935 from $120,000.00 per year to $80,000.00 per year payable in quarterly installments of $20,000.00 each, with the further provisions that the Building Company pay as rent $2500.00 to the Trustee for its ordinary services and also reasonable compensation to the Trustee for any extraordinary services.

A paragraph of the preamble of the modification reads as follows:

"Whereas, in view of the business depression now prevailing which has materially affected the income derived from said premises, the lessee has requested a temporary reduction in the rate of the rental under said lease for a limited period." (emphasis added.)

The original lease was also modified to provide that the lessee should have a first lien "upon all the rents, issues, profits and income accruing or to accrue therefrom, all whereof are hereby specifically pledged to the lessor for the purpose of securing the payment of rents, taxes, assessments, charges, liens, penalties and damages." This modification is in addition to the "first lien paramount to all others upon every right and interest of the lessees to and in said premises and all buildings or improvements erected or placed thereon."

Said modification agreement provided that the original lease should remain in full force and effect except as modified.

Upon the expiration of this first modification agreement the Building Company addressed a letter to the Trustee stating that it was unable to meet the payments of rent due under the lease. The substance of the letter is as follows:

"Confirming conference with you, The Citizens Building Company is unable to meet the payments of rent due under lease, under which you are now successor lessor and trustee. The amount of rental due July 1, 1935 is $28,125.00. (emphasis added)

We are furnishing you with complete financial statement of The Citizens Building Company as of May 31st, 1935, and operating statement for the first five months of 1935. We will also furnish you such other data or information as you may desire which might not have already been furnished.

In this situation the Company proposes that it continue operation of the property rendering monthly statements to you as lessor and Trustee for the Certificate Holders and turning over to you all the net receipts from the operation of the property, with the understanding that the operating expenses will be held to a minimum and that the overhead expense will not be increased without your consent and approval.

We suggest that this arrangement continue for a period of three years from July 1, 1935, subject to termination by you in the event that action is taken or requested of you by the holders of the Land Trust Certificates under the terms of the Declaration of Trust securing the same, and also subject to termination by The Citizens Building Company in the event that it is able to resume rental payments under the lease as modified."

In answer to this letter the Trustee replied as follows:

"Citizens Building Company of Cleveland
850 Euclid Avenue,
Cleveland, Ohio.

Attention: Mr. A. A. McCaslin, President:
Gentlemen:

Referring to your letter of the 27th ultimo to us and our discussion in connection therewith, this is to advise you that we are unable and unwilling to consent to your continued possession and operation of the so-called Citizens Building property on the basis proposed in your letter of the 27th ultimo, or to accept rental from you on the basis proposed in that letter. That letter indicates that you are unable to and do not intend to pay rentals on the basis stipulated in the original lease, and also indicates as does your circular letter dated April 1, 1935, addressed to your stockholders, that neither on the basis of property values nor of earnings do you have a leasehold estate which represents any real equity in the property.

Under the circumstances, we feel called upon to assert our lien on the leasehold estate and the rents, issues, profits and income accrued and accruing therefrom, all of which are specifically assigned and pledged to the lessor for the purpose of securing the payment of rents, taxes, assessments, charges, liens, penalties and damages covenanted to be paid by the lessee, and for the purpose of securing the performance of all and singular the covenants, conditions and obligations of the

lease to be performed and observed by the lessee, and we hereby demand that you account for and pay over to us, as lessor, all of the rents, issues, profits and income which have been received or have accrued from the leased premises since December 1, 1933, and which have not been applied to the payment of operating expenses, maintenance or improvement of the premises, or charges under the lease.

We would be disposed to recommend to the holders of Certificates of Participation under our Trust that you be allowed to continue in the possession and operation of the leased property for the period of one year beginning on July 1, 1935 and that during said year the rental remain at Eighty Thousand Dollars ($80,000.00) provided that you agree to and comply with the following conditions:

1. That you forthwith pay over to us to apply on rental all of the balance remaining in the so-called Improvement Fund set up in accordance with the Lease Modification Agreement made December 1, 1933, and all other cash except such amount as may be required to meet current bills now payable.

2. That you assign to us all bills receivable and accounts receivable as security for the payment of rentals under the lease, the proceeds of all collections thereon to be paid over to us as payment on account of rental.

3. That during said year and unless and until you resume and maintain, for at least three consecutive quarterly payments, rental payments at the rate stipulated in the original lease, or unless and until said lease shall be cancelled, or the leasehold estate shall be forfeited and the leased premises surrendered to us, you pay over to us, as received, the net cash proceeds from operations and assign all uncollected accounts making monthly accounting and settlement, your books and records to be open to us at all reasonable times, and all funds, other than petty cash, to be kept in a bank account subject to counter-signature on withdrawals by a person designated by us.

4. That executive and administrative overhead, including salary of the manager of the property and clerical help, be kept within $8,500.00, for the period, and that you shall pay, in addition to the Trustee's regular compensation and expenses, reasonable additional compensation for the extraordinary services to be rendered by it or by a person or persons designated by it.

5. That you will consult with us on all leases, cancellations, extensions, rental adjustments, and other operations, all of which shall be subject to our veto or approval.

If you will, within one week, indicate your approval of this plan on the accompanying carbon copy of this letter, return it to us and forthwith pay over, in escrow, all of the above mentioned cash, and deliver in escrow, an agreement of all of said bills receivable and accounts receivable, we shall submit the letter to the certificate holders and the Liquidator of The Union Trust Company, with our recommendation."

This proposal of July 5, 1935, was accepted by the Building Company and became effective in accordance with its terms. The provisions of paragraph 3, subsections 1, 2, 4 and 5, were complied with. However, upon the expiration of one year from July 1, 1935, no new agreement was made covering operations from that time forward, so that a question arises as to the construction and interpretation of this modification from and after July 1, 1936.

The Building Company contends as follows:

"1. The July 5, 1935, agreement between the trustee and the building company was a valid and enforcible modification of the rental provisions of the original lease.

2. Such modification agreement was to continue in accordance with paragraph 3 thereof until the happening of any of the following events:

(A) Resumption by the Building Company as lessee for at least three consecutive quarters of a rental payment at the rate stipulated in the original lease; and

(B) The lease should be cancelled, or

(C) The leasehold estate should be forfeited and the leased premises surrendered to the Trustee.

3. So long as the modification agreement was in effect, the rental was $80,000 for the year ending June 30, 1936; and thereafter until the modification agreement had been terminated as set forth above the rental was to be the net cash proceeds from the operation of the property, all of which were to be paid over to the Trustee by the Building Company.

4. The Trustee did not seek a cancellation of the lease or a forfeiture of the leasehold estate.

5. During the pendency of this proceeding, the building company, defendant appellant, resumed payment for three consecutive quarters of the rental as set forth in the original lease. This terminated the modification agreement and gave the building company the right to have possession of the property under the terms of the original lease.

6. The building company, defendant appellant, is now entitled to possession of the property but is bound, of course, by the terms of the original lease and any breach thereof in the future by the building company will give the Trustee the right to cancel and forfeit the lease in accordance with the provisions contained in such original lease."

The Trustee contends as follows:

1. The building company was bound by covenants of the lease with respect to the payment of rent and taxes and with respect to the lien given the trustee to secure payment of such rents, taxes and other charges.

2. The modification agreement of July 5, 1935, between the building company and the trustee provided for the reduction of the rental for a period of one year and one year only.

3. The fixing of the rental at $80,000 for the one year period from July 1, 1935 to June 30, 1936 was subject to the agreement to, and compliance with, five specific conditions of the building company.

4. The modification agreement of 1935 and the compliance with the five conditions set forth in the July 5, 1935 letter did **not**:

(a) terminate the lease provisions for the payment of rent;

(b) give the building company the privilege of incurring unlimited additional delinquency by taking away all rights of the trustee;

(c) bar the trustee from instituting an action to foreclose the leasehold estate to satisfy the trustee's lien for delinquent rent;

(d) change the rent from the rate of $120,000 per year, fixed in the lease, and did **not** fix the rent, after June 30, 1936, as the net cash proceeds from the operation of the property.

5. The building company has defaulted in the performance of covenants and obligations imposed upon it by the terms of the lease, and the rent delinquency resulting therefrom, at the time of judgment, amounted to $636,671.39 with interest at eight percent from April 1, 1946.

6. The building company had **not** resumed for **three consecutive payments**, rental payments at the rate stipulated in the lease and even so, the defendant being delinquent, it would not preclude the action in foreclosure nor constitute any defense thereto.

7. Ample credible evidence supported the finding and

judgment of the trial court and such judgment therefore should be affirmed."

The principal questions which seem to emerge from the respective contentions of the parties are whether according to the modification of July 5, 1935, the rate of rentals on and after July 1, 1936, was intended to be (a) the net receipts from the operation of the building in lieu of stipulated rental; or (b) the sum of $80,000 per annum as set forth in paragraph 3 of the modification, or (c) the sum of $120,000 per annum, the rental stipulated in the original lease.

In the trial of the case, both the trustee and the building company presented as evidence their respective accounts for the period of ten years and nine months from July 1, 1936 to March 31, 1946. There is no substantial difference between these two accounts except in the matter of charges for rent and taxes.

According to defendant building company's "Exhibit B" hereinafter referred to, its accounting is based on the modification agreement of July 5, 1935 and provides for a rental of $80,000.00 per year. If such $80,000.00 is a minimum rent, such accounting shows that there has been a deficit in rent paid to the trustee in the amount of $119,671.73.

The trustee's accounting charges rent at the rate of $120,000 per annum, plus taxes after July 1, 1936. If such $120,000 is a minimum annual rental there is a deficit in the amount of rent paid to the trustee in the sum of $449,207.15 with interest at the rate of eight percent, making a total due the trustee as back rent in the sum of $636,671.30 which is the amount of the judgment rendered in favor of the trustee in the trial court.

There are certain fundamental rules of interpretation and construction relating to contracts generally which apply alike to the construction of leases which are so generally accepted that we think no citation of authority is necessary. Some of these rules may be stated generally as follows:

Contracts should be construed as a whole and full force and effect must be given each and every part thereof.

The contract or lease should be interpreted and construed in such a manner as to give full effect to the evident intention of the parties. In so doing the intent should be gathered from the language employed, giving to the words used their common, ordinary and usual meaning.

The language employed should be construed in the light of circumstances surrounding the contracting parties at the time, particularly where such language is used in modification of a prior existing agreement.

Where a dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract, and great weight will be given to such construction.

In the instant case the terms of the original 99-year lease are definite and certain. It appears from the evidence in the record that no serious difficulty arose concerning the operations under the original lease or the first modification thereof.

We consider it a matter of importance that the first modification was prompted by the fact that the lessee was unable to meet the rental terms of the original lease as expressed in the preamble of the second modification above quoted.

It is quite clear also that it was because the lessee was unable to meet the payments of rent due under the lease, together with the other charges thereon, that the second modification agreement was proposed and executed. Under these circumstances while it might be generally conceded that the modifications agreed to were of some mutual benefit, the greatest benefit accrued to the lessee because of the substantial reduction in rentals at the rate of $40,000 per annum for a period of three years and the opportunity granted lessee to continue operation under the terms of the lease and to redeem, subject to certain conditions of security.

In such a situation it seems to us that the temporary modifications should be construed in the light of the terms of the original instrument. In so doing a reasonable and equitable construction and one which leads to justice and fairness between the parties should be applied. It would follow, therefore, that a modification of the 99-year lease, temporary in nature, should be limited to the express terms of the modification and whatever is reasonably and fairly implied by such terms.

In the instant case a reasonable and equitable construction in the light of all of the circumstances would indicate that there was no intention upon the part of the parties to abrogate the terms of the original lease but rather there is a manifest intention to ameliorate pro temporate only the terms of the rental payments and to grant the building company an opportunity to eventually resume normal operations and to fulfill its obligations according to the terms of the original lease.

Applying these rules, it is our opinion that the claim of the building company that the net receipts of the operation were to be accepted in lieu of stipulated rental cannot be sus-

tained, for nowhere do we find language which expressly or impliedly warrants such a construction.

Applying the same principle, it is also our conclusion that by the express terms of the modification the reduced rental was to be for the period of one year only. This is clear from the context set forth in the third paragraph wherein the words are used:

"For the period of one year beginning on July 1, 1935 and that during said year the rental remain at $80,000.00."

We believe that our conclusions covering these material points are supported by the rules of construction stated, but we also find that the evidence adduced at the trial showing the conduct of the parties confirms this construction.

During the course of the trial the evidence adduced by the defendant included an "Exhibit B" setting up charges for rental at the rate of $20,000 per quarter commencing with the 3rd quarter of 1935 and extending through the 1st quarter of 1946, both inclusive. The evidence indicates that the rental charges at the rate of $20,000 per quarter or $80,000 per annum set forth on defendants "Exhibit B" were not taken from the books of the building company but were the rates set up by their accountant partly under instruction from counsel and partly upon the accountant's analysis of the modification agreement. The admissions of the witnesses for the defendant, building company, disclose that a computation of rental charges on the basis of $20,000 per quarter would leave a deficit in rental payments in the amount of $119,671.73 constituting a default and giving rise to a right of action.

However, passing to a consideration of other evidence we find among the exhibits a series of letters marked "Plaintiff's exhibits 8(a) through 8(r) inclusive which tend to sustain the contentions of the plaintiff trustee that according to the understanding of the parties, the rental from July 1, 1936 through April, 1945, was $30,000.00 per quarter or $120,000 per annum, the amount stipulated in the original lease.

Without analyzing the letters in detail it appears that commencing July 1, 1936, the building company sent to the trustee from time to time letters of inquiry concerning the rental charges and other charges. The first of such letters addressed to the trustee is dated July 1, 1936, and is as follows:

"In order to complete our records will you kindly send us a notice of payment covering the amount applied on ground

rent of The Citizens Building Company since January 1, 1936, from the monthly payments which we turn over to you.

Also, please advise if the payment of balance due of $1,-652.90 on the first half of 1935 taxes was paid entirely by cash or if scrip was applied, and in what amount.

Very truly yours

THE CITIZENS BUILDING COMPANY OF CLEVELAND

BY Ralph R. Brewer."

The answer of the trustee thereto marked "Exhibit 8-a" is as follows:

"We have your letter of July 1st and to date have applied against ground rental owed by your Company on the Citizens Building only the sums actually distributed by us to the Land Trust Certificate holders. Accordingly the account is as follows:

| Rent due Jan. 1, 1936 | $20,000.00 |
|---|---|
| Rent due Apr. 1, 1936 | $20,000.00 |
| Rent due July 1, 1936 | $20,000.00 |

Credits:

| March 28, 1936 | $10,000.00 |
|---|---|
| June 29, 1936 | 10,000.00 |

The balance of $1,652.90 for taxes for the first half of 1935 was paid, $935.00 in script and $717.90 in cash.

Very truly yours

L. C. Gilger,

Senior Corporate Trust Officer."

(Emphasis added)

It will be noted that the rental set forth in Exhibit 8-(a) commencing July 1, 1936 **is at the rate of $30,000 per quarter.** Another letter of inquiry dated April 1, 1942 making similar inquiries is answered April 6, 1942 (exhibit 8-(f) ) showing the ground rental accrued in the sum of $261,048.40 and unpaid. All of these letters through April, 1945 set up rental at the rate of $30,000.00 per quarter or $120,000 per annum according to the terms of the original lease.

The record shows that in some cases the original letters were sent to Ernst & Ernst, auditors of the building company, and copies sent to the building company.

Throughout the period of time during which these letters were written, we find that the building company made no pro-

test concerning the rental rate set forth in the letters in answer to their inquiries. It appears to us that in such a situation silence is tantamount to acquiescence. At some time during this ten-year period with knowledge that the trustee's charges had reverted to the terms of the original lease, some protest would have been made if the understanding of the building company was otherwise. We think further that when the first letter was sent, dated July 7, setting forth that on July 1, 1936, the first quarter rental was at the rate of $30,000 per quarter the building company was put on notice directly and expressly that the trustee was charging at the rate set forth in the original lease. This was the time for the building company to protest and to 'notify the trustee that such a charge was not in accordance with the terms of the modification agreement as now claimed.

The evidence also shows that the building company carried on its own books the amount of delinquency as calculated by the trustee, at the rate of $30,000 per quarter which course of conduct is directly inconsistent with the amount calculated on its own "Exhibit B" and the other claims now made in this case. This course of conduct continued from 1936 until the filing of the foreclosure suit in 1944.

We reach the conclusion therefore that by its course of conduct in accepting the interpretation of the modification agreement as providing for a rental of $30,000 per quarter, in accordance with the terms of the original lease, after the expiration of one year at the rate of $20,000 per quarter, that the building company is estopped now to deny a construction and interpretation contrary to that evidenced by it in its own dealings with the trustee over the period of time stated.

With respect to the claim of the building company that three consecutive payments had been made according to their interpretation of sub-paragraph 3 of the original modification, it is claimed that the amounts paid were for three consecutive quarters ending Sept. 30, 1945; December 31, 1945 and March 31, 1946. We find that this claim is not supported by the evidence when allowance is made for proper adjustments of rental and tax charges over the period in question. It appears further that no claim was made concerning this until May 15, 1946 which would be a period of about one year and six months after default had been declared and a petition for money, accounting, foreclosure and relief had been filed in the common pleas court.

We conclude, therefore, after a careful review of the record, that the contentions of the trustee hereinbefore set forth

should be sustained; that the findings of the common pleas court were in accord with the great weight of the evidence; and that no prejudicial error intervened.

For the foregoing reasons the judgment of the court of common pleas is affirmed.

MORGAN and SKEEL, JJ, concur.