BEVY'S DRY CLEANERS AND SHIRT LAUNDRY, INC. ET, PLAINTIFF-APPELLANT, *v.* STREBLE ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26467.   Decided December 12, 1963.

*Mr. Walter L. Greene,* for plaintiff-appellant.
*Messrs, Burke, Haber & Berick, Messrs. Ulmer, Berne, Laronge, Glickman & Curtis,* for defendants-appellees.

KOVACHY, P. J.  This is an appeal on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga County.

On *October 6, 1958,* Paul Weiss, Evelyn Weiss, Alex Frank and Theobald Frank (hereinafter referred to as lessors), by written lease, demised a storeroom located at 22681 Shore Center Drive, Euclid, Ohio, to Euclid Coin Laundry, Inc.

On *October 14, 1958,* the lessors, by written lease, demised an adjoining storeroom located at 22691 Shore Center Drive, Euclid, Ohio, to Bevy's Dry Cleaners and Shirt Laundry, Inc.

On *August 24, 1961,* Euclid Coin Laundry, Inc. assigned its lease to Speedi-Kleen, Inc.

The *purpose clause* of the October 6, 1958, lease (hereinafter referred to as the Speedi lease) read as follows:

"7. Lessee covenants that during the term of this lease and any renewal thereof:

"(a) It will use the leased premises for the conduct of a self-service laundry and the sale and display of such items as are normally sold by self-service laundries. * * *"

The *purpose clause* of the October 14, 1958, lease (hereinafter referred to as the Bevy's lease) read as follows:

"Said premises are to be used and occupied to conduct and carry on a general laundry business in all of its branches; to conduct and carry on the business of cleaning, pressing, and dyeing wearing apparel; to conduct and carry on the tailoring business; to clean, restore, mend, repair, and dye household furnishings, furniture, cloth, textiles, fabrics, leather and furs. * * *"

In addition, the Bevy's lease contained a covenant styled "Restriction," which read as follows:

"The lessors do hereby for themselves, their heirs, executors, administrators and assigns, covenant and agree with the Lessee, its successors and assigns, that during the term of this lease or any renewal thereof they will not suffer occupancy of any storeroom or building owned by them or in which they have an interest by another dry cleaning or shirt laundry or combination of the two within a radius of three (3) miles from the premises herein described, excepting a coin-operated automatic laundry situated in the adjacent storeroom."

Bevy's, in accordance with the provisions of its lease, conducted a dry cleaning and shirt laundry business.

Speedi conducted a self-service laundry with coin-operated *washing machines* until November 19, 1962, when it started installation of two coin-operated *dry cleaning machines.*

On November 21, 1962, Bevy's filed a petition to enjoin Speedi "from installing and/or operating any dry cleaning equipment in the premises * * *."

The trial court denied injunctive relief and entered a decree and judgment in favor of the defendant lessors and defendant Speedi.

Appellant Bevy's, in the main, claims that the judgment of the trial court was contrary to law.

Defendants-appellees, lessors and Speedi, maintain that the purpose clause in the Speedi lease did not restrict Speedi "from installing coin-operated dry cleaning machines" and that such interpretation was according to law.

In 6 Ruling Case Law, 849, Contracts, Section 239, entitled "Surrounding Circumstances" reads as follows:

"Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. It is therefore an established canon of construction that in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application. And the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made. * * *"

The Ohio Supreme Court in the case of *Third National Bank of Cincinnati* v. *Laidlaw*, 86 Ohio St., 91, at page 99, 98 N. E., 1015, in discussing a contract of guarantee, said the following:

"A guarantor, like a surety, is bound only by the words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used, is to be ascertained in the same manner as the meaning of similar words used in other contracts. The language used, is to be understood in its plain, ordinary sense, as read in the light of surrounding circumstances, the situation of the parties, and the object of the guaranty, and that construction given which most nearly conforms to the intention of the parties. Parol evidence is not admissible to enlarge or to limit the terms of the instrument. But evidence of the surrounding circumstances is competent, in order to arrive at the intention of the parties, as declared by the words employed, and as in construing all

contracts, the words employed by the parties will be construed in the light of these circumstances. *Morgan* v. *Boyer,* 39 Ohio St., 324; *Cambria Iron Co.* v. *Keynes,* 56 Ohio St., 501; *Merchants Natl. Bank* v. *Cole,* 83 Ohio St., 50; 20 Cyc., 1439."

See also, *National City Bank of Cleveland* v. *Citizens Building Co. et al.,* 48 Ohio Law Abs., 325, 74 N. E. (2d), 273; *Weisant* v. *Follett et al.,* 17 Ohio App., 371.

Webster's International Dictionary, 2d Edition, defines the word "laundry" as "1. Act of laundering; a washing; 2. An establishment or place where laundering is done * * *," and the word "launder" is defined as "1. To wash, as clothes; to wash, and to smotth with a flatiron or mangle. * * *"

When these leases were executed in October, 1958, there were no coin-operated *dry cleaning machines* in operation in Cuyahoga County, and coin-operated *dry cleaning machines* were never incidental to the operation of a *self-service laundry.* Whatever "self-service" laundries were in operation at the time invariably used only coin-operated washing machines. These coin-operated washing machines were the same type of automatic washing machines used by the average person in the home for washing clothes except that the machines in the "self-service" laundry were activated by coins which set the motors of the machines in action and washed the clothing by the use of soap and water in the same manner as did the machines in the homes. In view of the situation just outlined with respect to "self-service" laundries in Cuyahoga County at the time of the execution of these leases, it seems manifest to us that the expression "self-service Laundry" in the Speedi lease connoted a business wherein people were offered the opportunity to wash their clothes in an automatic washing machine activated for a definite period of time by a coin inserted by the users.

We believe the Bevy's lease executed eight days after the Speedi lease fortifies the conclusion outlined above. The purpose clause in the Bevy's lease provided that "the premises are to be used and occupied to conduct and carry on a general laundry business in all of its branches; to conduct and carry on the business of cleaning * * *; to clean; * * * household furnishings, furniture, cloth, textiles, fabrics, leather and furs

* * *." Thus, in broad terms, the Bevy's lease permitted the carrying on of a *dry cleaning* establishment, which business customarily included the laundering of shirts. In addition, Bevy's was granted a "restriction" covenant which was designed to protect it from competition within an area of three miles in its dry cleaning and shirt laundering business insofar as the lessors were able to control such situation. The lease provided that the lessors "will not suffer occupancy of any storeroom or building owned by them or in which they have an interest by any dry cleaning or *shirt laundry* or combination of the two * * * *excepting a coin-operated automatic laundry situated in the adjacent storeroom.*" (Emphasis added.) It seems obvious to us that the participial phrase added at the end of the "restriction" covenant was intended to make crystal clear the fact that the protection granted Bevy's by lessors from competition in its business did not apply to Speedi insofar as *shirt laundering* was concerned inasmuch as the lease granted Speedi embraced the washing of clothes, which activity necessarily included the laundering of shirts, and that to such extent Speedi was excepted from the scope of the "restriction" covenant and hence permitted to compete with Bevy's business only with respect thereto.

Accordingly, we hold that the purpose clause of the Speedi lease was couched in plain, ordinary and unambiguous language; that in the light of the surrounding circumstances and the situation of the parties, the unmistakable import of the expression "for the conduct of self-service laundry" was that the lessee be permitted to conduct a business for the washing of clothes with coin-operated washing machines; that the parties clearly understood and intended that only such business be conducted on the premises; that the use of coin-operated dry cleaning machines did not come within the purview of the purpose clause incorporated in the Speedi lease and that as a consequence the judgment of the Court of Common Pleas was contrary to law.

It follows, therefore, that Speedi, by installing the two coin-operated dry cleaning machines, was competing with the dry cleaning business of Bevy's in direct violation of the lease granted it by lessors to the irreparable injury of Bevy's. Fur-

thermore, Bevy's had a binding written promise from the lessors to protect it from competition in its business insofar as the rental of property owned by the lessors was concerned and since the lessors had failed to take steps to protect Bevy's in the matter, Bevy's had the right to invoke a court of equity to enjoin Speedi from installing and continuing the use of coin-operated dry cleaning machines in competition with it in its dry cleaning business.

In *Linwood Park Company* v. *Van Dusen*, 63 Ohio St., 183, 58 N. E., 576, the Supreme Court stated the following in paragraph two of the syllabus:

"Upon a breach of the covenants and to restrain an irreparable injury resulting therefrom, injunction is a proper remedy."

See also, *Stines* v. *Dorman*, 25 Ohio St., 580; *Caldwell & Taylor Corp.* v. *Nieberhelman,* 39 Ohio App., 136, 177 N. E., 42; *Diehl Brewing Co.* v. *Konst*, 12 O. C. C. N. S., 577.

The judgment, accordingly, is reversed and final judgment rendered for the appellant.

Exceptions. Order see journal.

ARTL and CORRIGAN, JJ., concur.