[Cite as *Anderson Twp. Bd. of Trustees v. Anderson Twp. Professional Firefighters Assn., Laff Local 3111*, 2019-Ohio-2302.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF ANDERSON TOWNSHIP, OHIO, | : | APPEAL NO. C-180371 TRIAL NO. A-1800918 |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| vs. | : | |
| ANDERSON TOWNSHIP PROFESSIONAL FIREFIGHTERS ASSOCIATION, IAFF LOCAL 3111, | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 12, 2019

*Frost Brown Todd, LLC,* and *Thomas B. Allen*, for Plaintiff-Appellant,

*Lazarus & Lewis, LLC,* and *Kimberly A. Rutowski*, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1}    Plaintiff-appellant the Board of Trustees of Anderson Township ("Board"), appeals the trial court's judgment denying its motion to vacate an arbitration award in favor of defendant-appellee the Anderson Township Professional Firefighters Association, IAFF Local 3111 ("Union").    Because the arbitration award drew its essence from the parties' collective-bargaining agreement ("CBA"), we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2}    Pursuant to the terms of the CBA, Union member Lieutenant William Tillett received notice that disciplinary proceedings were being initiated against him because he had surrendered his fire-inspection certification.  A conduct conference was held on May 1, 2017.  Tillett received notice on May 4, 2017, that his conduct would result in disciplinary action, specifically a demotion from the rank of Lieutenant to the rank of Firefighter 6, effective May 6, 2017.  Tillett requested a reconsideration meeting pursuant to Article 8.3(E) of the CBA.  The reconsideration meeting was held on May 10, 2017, and, approximately one week later, Tillett received notice that his demotion, which had taken effect on May 6, was upheld. Tillett appealed to both the Township Administrator and the Board, but his demotion was upheld at all levels.

{¶3}    The Union filed a grievance on behalf of Tillett, arguing that the Board's implementation of his demotion prior to the exhaustion of his appellate remedies violated the CBA and disregarded the parties' long-standing past practice of not imposing discipline until the appeals process was completed.  The grievance was denied, and the Union filed for arbitration.

{¶4} At the arbitration hearing, the Board argued that the CBA allowed it to impose discipline effective immediately, and that because the CBA was not ambiguous, the arbitrator could not rely on the parties' past practice to interpret the agreement. It further argued that the Union could not successfully prove a past practice, and that a zipper clause in the CBA prohibited any party from relying on a past practice. But the Union contended that Article 8 of the CBA was ambiguous regarding when imposed discipline should be implemented, and that the parties' past practice of delaying the implementation of imposed discipline until after the appeals process was concluded should resolve the ambiguity.

{¶5} At the arbitration hearing, Tillett testified that he served as president of the Union for approximately 18 years, and that in his tenure as president, absent an employee's decision not to appeal, discipline had never been implemented before all appeals were completed. Tillett discussed five specific instances in which discipline imposed on Union members was not implemented until the appeals process was concluded. Three of these occurred prior to the date of the current CBA. But two of these instances occurred after the effective date of the current CBA.

{¶6} Ken Lovins, who was president of the Union during Tillett's disciplinary proceedings and arbitration hearing, testified that in his 20-year history with the Anderson Township Fire Department, he was unaware of discipline ever being implemented before all appeals were exhausted. Township Administrator Vicky Earhart likewise testified that, to her knowledge, discipline had never been implemented prior to the appeals process concluding.

{¶7} The arbitrator sustained the Union's grievance. Construing the CBA, the arbitrator determined that the CBA language allowing for the imposition of discipline was clear and unambiguous, but that the CBA had a gap and was silent as to when the imposed discipline could be implemented. The arbitrator further determined that the parties' conduct, both before and after the controlling CBA took

effect, required postponing the implementation of discipline until after the appeals process was completed.

{¶8} The Board filed a motion to vacate the arbitrator's award in the court of common pleas. The trial court found that sufficient ambiguity existed in Article 8.3 of the CBA to preclude a finding that the arbitrator's decision directly conflicted with any express language in the CBA. The trial court further found that the arbitrator's award drew its essence from the CBA, and it denied the Board's motion to vacate.

### Standard of Review

{¶9} Pursuant to R.C. 2711.10, an arbitrator's award may only be vacated in very limited circumstances, including, as relevant to this appeal, where "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D).

{¶10} An arbitrator's authority is limited to that granted to the arbitrator under the terms of the parties' agreement, and an arbitrator exceeds that authority where her award does not draw its essence from the agreement. *H.C. Nutting Co. v. Midland Atlantic Dev. Co., LLC*, 2013-Ohio-5511, 5 N.E.3d 125, ¶ 13 (1st Dist.).

{¶11} An award draws its essence from the parties' agreement where "there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." *Princeton City School Dist. Bd. of Edn. v. Princeton Assn. of Classroom Educators*, 1st Dist. Hamilton No. C-120469, 2013-Ohio-667, ¶ 12, quoting *Mahoning Cty. Bd. of Mental Retardation and Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.,* 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986). But an arbitrator's award departs from the essence of the agreement where "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms

4

of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

{¶12} Deference must be given to the arbitrator's decision. "[T]he arbitrator is the final judge of both the law and the facts, and a court may not substitute its judgment for that of the arbitrator. * * * Judicial deference in arbitration cases is based on a recognition that the parties have agreed to have their dispute settled by an arbitrator rather than the courts and 'to accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome of the arbitration.' " *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2017-Ohio-888, 86 N.E.3d 580, ¶ 11 (11th Dist.), quoting *Arrow Uniform Rental, LP v. K & D Group, Inc.*, 11th Dist. Lake No. 2010-L-152, 2011-Ohio-6203, ¶ 35-36.

{¶13} While we must accept any findings of fact that are not clearly erroneous, we conduct a de novo review of the trial court's decision to determine whether any of the grounds in R.C. 2711.10 exist to support vacating the arbitrator's award. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus.

### *Arbitrator's Award Must be Upheld*

{¶14} In a single assignment of error, the Board argues that the trial court erred by denying its motion to vacate the arbitrator's decision. It specifically contends that the arbitrator exceeded her powers by adding an exhaustion requirement to the language of the CBA; that the award departed from the essence of the CBA because the arbitrator failed to discuss sections 4.1, 4.2, 4.3, and 4.5 of the CBA; and that the award conflicted with express terms of the CBA.

{¶15} Article 8 of the CBA provides for discipline of employees and sets forth the detailed procedure to be followed when imposing discipline. Article 8.3(A) provides that an employee shall be notified in writing that she or he is being accused

of conduct for which formal discipline is contemplated. Article 8.3(B) provides that the Chief or the Chief's designee must conduct a conference, at which time the charges will be stated to the employee and the employee will have a chance to offer an explanation, defense, or mitigating circumstances. Article 8.3(C) provides that at the conclusion of the conference, the Chief or the Chief's designee shall "1. Dismiss the allegations as unfounded without record; 2. Impose discipline of record; [or] 3. Continue the conference in progress for a period not to exceed seventy-two (72) hours." Articles 8.3(D) and (E) outline the procedure for appealing any imposed discipline.

{¶16} Article 6 concerns the grievance procedure and provides for arbitration. It sets forth the powers of the arbitrator, stating that the she or he "shall not have power to add to, subtract from, or modify this Agreement, but shall only have authority to interpret and apply the terms of this Agreement."

{¶17} And Article 4 of the CBA sets forth various management rights, including:

4.1 The Employer retains the right to manage, direct, and supervise the work force as it sees fit except to the extent that such rights are specifically and expressly modified by the terms of this Agreement.

4.2 The Employer retains all rights, authority, and powers of an Employer except as specifically and expressly modified herein.

4.3 The Employer is free to implement changes in policy or operation during the term of this Agreement so long as such changes do not alter any of the terms specifically agreed upon herein.

* * *

4.5 Any matters not specifically covered by this Agreement shall be considered to be within the discretion of the Employer and shall be subject to all applicable laws or resolutions now existing or hereinafter adopted. * * * This agreement represents all of the Employees' rights,

privileges and benefits granted by the Employer. Unless specifically and expressly set forth in this Agreement, all past practices and benefits previously granted are not in effect.

{¶18} Following our review of the record, we find that the arbitrator's award involves interpretation of the CBA, draws its essence from the CBA, and does not conflict with any express terms of the CBA.

{¶19} In sustaining the Union's grievance and concluding that the Board could not impose discipline until all appellate remedies had been exhausted, the arbitrator interpreted the CBA, as she was authorized to do pursuant to Article 6. In interpreting the CBA, the arbitrator determined that Article 8.3(C) allowed discipline to be imposed, but was silent as to when any imposed discipline could be implemented. In her award, the arbitrator seemingly distinguished situations involving a silent contract and those involving an ambiguous contract before determining that the parties' conduct is relevant to filling any gap created by a contract that is silent on an issue. But here, we find this to be a distinction without a difference. Regardless of whether a contractual provision is considered ambiguous or silent, arbitrators can look to the conduct of the parties to see how they have interpreted the agreement. *See St. Mary's v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 39, quoting *Natl. City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland*, 48 Ohio Law Abs. 325, 335, 74 N.E.2d 273 (8th Dist.1947) ("Where a dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract * * *."); *William Powell Co. v. Onebeacon Ins. Co.,* 2016-Ohio-8124, 75 N.E.3d 909, ¶ 33 (1st Dist.) (the parties' postcontract formation conduct is relevant to determine their intent when a contract is ambiguous); *Money Station, Inc. v. Electronic Payment Serv., Inc.,* 136 Ohio App.3d 65, 71, 735 N.E.2d 966 (1st Dist.1999) (when a court finds a contractual provision to

be ambiguous, it may look to extrinsic evidence to determine the parties' intent, including any acts by the parties that demonstrate their interpretation of the contract). It was thus appropriate for the arbitrator to consider the conduct of the parties after the effective date of the current CBA to determine how they interpreted the contract and the timing of the implementation of imposed discipline.

{¶20} Contrary to the Board's argument, the arbitrator's consideration of the parties' conduct did not expressly conflict with the zipper clause in Article 4.5, which provided that "all past practices and benefits previously granted are not in effect." In determining that the township could not impose discipline until the appeals process was completed, the arbitrator was not enforcing any past practice; rather, she was looking to the parties' current conduct following the effective date of the current CBA to determine how they interpreted the contract. This she is permitted to do. And in two instances in which discipline was imposed under the terms of the current CBA, the discipline was not implemented until either all appeals were exhausted or the employee elected not to appeal any further.

{¶21} We find no error in the arbitrator's failure to discuss sections 4.1, 4.2, 4.3, and 4.5 of the CBA. These provisions do not directly concern disciplinary procedures or the implementation of discipline, and are not in conflict with the arbitrator's award. Moreover, these provisions provide generally that the township retains the right to supervise its workforce as it sees fit, unless the rights of the employer to manage, direct, or supervise the employees are specifically and expressly modified by the CBA. The right to discipline an employee is specifically addressed, even though the timing of the implementation is ambiguous. And, these provisions do not prohibit an arbitrator from interpreting the CBA to resolve an ambiguity. Further, there is no requirement that an arbitrator discuss every provision that she considered in determining an award.

{¶22} The Board argues that if it is required to delay the implementation of discipline until the appeals process is completed, an employee could remain on the

job committing acts that negatively impact the safety of the community. But the Board has alternative avenues available to handle such a situation, other than the immediate implementation of discipline. Article 8.2 of the CBA specifically defines discipline to be "written reprimand, suspension without pay, demotion to lower classification, loss of vacation, or dismissal." Not included as discipline is a suspension with pay. Thus, if an employee posed a risk to the public, the township could suspend that employee with pay pending discipline.

{¶23} Here, the arbitrator's award did not conflict with the express terms of the CBA, and it drew its essence from that agreement, as there was a rational nexus between the agreement and the award and the award was not arbitrary, capricious, or unlawful. Consequently, we hold that the trial court did not err in denying the Board's motion to vacate.

{¶24} The Board's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

    The court has recorded its own entry on the date of the release of this opinion.