OPINION
Plaintiffs the International Association of Fire Fighters, Local 606 and Joseph W. Ruby appeal a judgment of the Court of Common Pleas of Delaware County, Ohio, which affirmed in part and reversed in part the decision of the arbitrator in plaintiffs' dispute with defendant the City of Delaware. Appellants assign three errors to the trial court:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1
THE COURT OF COMMON PLEAS ERRED IN NOT RULING THAT THE ARBITRATOR'S AWARD SHOULD BE VACATED SINCE THE AWARD RELIED ON A MEMORANDUM OF AGREEMENT THAT HAD EXPIRED BY OPERATION OF LAW AND HAD BEEN SUPERSEDED BY ANOTHER COLLECTIVE BARGAINING AGREEMENT.
ASSIGNMENT OF ERROR NO. 2
THE COURT OF COMMON PLEAS ERRED IN NOT RULING THAT THE ARBITRATOR'S AWARD SHOULD BE VACATED SINCE THE AWARD VIOLATED FEDERAL LAW.
ASSIGNMENT OF ERROR NO. 3
THE COURT OF COMMON PLEAS ERRED IN NOT RULING THAT THE ARBITRATOR'S AWARD SHOULD BE VACATED SINCE THE AWARD DID NOT DRAW ITS ESSENCE FROM THE AGREEMENT AND WAS CONTRARY TO THE EXPRESS LANGUAGE OF THE AGREEMENT.
Local 606 of the International Association of Firefighters is the exclusive collective bargaining representative for persons employed by the Delaware Fire Department. This dispute arose when appellant, Captain Joseph Ruby, retired from the City Fire Department in January, 1995. Pursuant to the collective bargaining agreement between appellee and appellant, Captain Ruby was entitled to be paid for unused sick leave, vacation, holiday, personal, and compensatory time upon retirement. Over his years of service, Captain Ruby had accumulated a considerable amount of leave time which he had not used. The dispute here centers around the rate of pay the City should use in computing Captain Ruby's retirement payoff. In order to make this determination, it is necessary to review the history of the labor agreements between the labor union and the City. On May 14, 1991, the City and the union executed a collective bargaining agreement effective from March 1, 1991 through February 28, 1994. On the same day, the parties executed a memorandum of agreement dealing with one of the provisions in the contract. This provision in the 1991 contract is the most pertinent to this appeal. The memorandum of agreement dealt with the contract clause which reduced the firefighters' work week from 56 hours prior to 1991, to 50 per week. Although the hours were reduced, the annual pay remained the same, resulting in an increase in the hourly pay. The memorandum the parties executed included a provision to "red circle" or establish the accruals of vacation, sick, and earned time as of February 28, 1991. Those amounts are fixed, and the memorandum provided that any hours up to the total amount of hours "red circled" which are cashed in at any time will be paid at the member's 56-hour rate. The employees continued to earn the various types of leave under the new contract, although leaves accumulate faster during a 56-hour week than during a 50-hour week. It does not appear any provision was made to distinguish between leave accumulated before February 28, 1991, at a lower rate of pay, from leave accumulated after February 28, 1991, at the higher hourly rate applicable to the 50 hour week. Each employee signed a statement detailing their earned but unused vacation, sick leave, and other leave, and these statements became part of their personnel files. On August 23, 1995, the Union and the City executed a new labor agreement effective March 1, 1994 through March 31, 1997. This contract does not mention the "red circle" hours, and no new memorandum of agreement was signed with the 1994 contract. The 1994 collective bargaining agreement provided a retired person who had unused compensatory time was to be paid the cash value for such accrued compensatory time. The contract also provided upon retirement, an employee was entitled to be paid unused vacation leave, sick leave, personal time, holiday time, and compensatory time based upon the member's "regular hourly rate at the time of separation." In January, 1995, Captain Ruby retired. He concedes he was a firefighter and member of the Union at the time the 1991 agreement was signed. Captain Ruby signed a statement fixing the accruals of his vacation, sick, and earned time pursuant to the "red circle" memorandum. An employee's regular hourly rate is calculated by dividing his annual salary by 52 weeks and by the hours in the work week. Thus, a 50 hour work week is computed by dividing the annual salary by 2,600 hours. In a 56-hour work week, the annual salary is divided by 2912 hours. The parties represent the 56-hour rate yields approximately 12 percent less than the 50-hour rate. The City computed Captain Ruby's payoff at the 56 hour rate, regardless of when the leave was accumulated. The City maintained the 1991 memorandum of agreement permanently fixed Captain Ruby's payoff amount at the 56 hour rate, regardless of when the Captain retired. It is interesting to note that Captain Ruby's accumulated vacation time as of February 28, 1991, was 807 hours, while he had accumulated 1050.95 hours of vacation leave upon his retirement. Thus, if the 1991 "red circle" memorandum were still in effect at the time Captain Ruby retired, by the plain terms of the agreement's language, the City would be obligated to pay him 807 hours at the lower amount, and the balance at the higher, 50-hour per week rate. Nevertheless, the City paid the entire leave payoff at the 56-hour rate, maintaining the provision in the 1994 collective bargaining agreement requiring the City to pay at the employee's regular hourly rate did not apply to Captain Ruby, and others who had signed the statements pursuant to the 1991 "red circle" memorandum. Captain Ruby and the Union filed a grievance challenging the City's action, and the matter went to arbitration. The arbitrator held the City did not violate the collective bargaining agreement by using the 56-hour rate, rather than the higher 50-hour rate, to pay the accumulated leave. Captain Ruby and the Union appealed the matter to the court of common pleas, which held the arbitrator was correct in enforcing the 56-hour rate to the leave accumulated prior to March 1, 1991. However, the court expressed concern about the applicable rate for leave earned after March 1, 1991. The court found the benefits accumulated after the new rate, should be paid out at the new rate when the employee retires. The court found once an employee has accumulated leave under both the old rate and the new, and uses the leave before retirement, the employee should have the option to decide which leave the employee uses. In other words, the court of common pleas found it was unfair that under the system employed by the City, the employee must always use the new, higher valued leave, while the old, lower valued leave continues to be banked towards retirement. The court found the language in the contract was ambiguous. The court of common pleas reversed the arbitrator's ruling and returned the matter for recomputation of old leave and new leave.
 I
R.C. 2711.10 provides in pertinent part: In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if: (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
An arbitration award must draw its essence from the collective bargaining agreement, Board of Education of the Findlay City School District v. Findlay Education Association (1990), 49 Ohio St.3d 129. An arbitrator's award draws its essence from a collective bargaining agreement only where there is a rational nexus between the agreement and the award, and the award is not arbitrary, capricious, or unlawful, Mahoning Board of Mental Retardation and Developmental Disabilities v. Mahoning County TMR Education Association (1986), 22 Ohio St.3d 80. An arbitrator's award departs from the essence of the bargaining agreement when the award conflicts with the express terms of the agreement, Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Association Local 11, AFSCME (1991), 59 Ohio St.3d 177. Appellants urge the arbitrator's decision does not draw its essence from the collective bargaining agreement, for a number of reasons. First, the decision is not based upon any collective bargaining agreement, but instead, on the memorandum which "red circled" the employee's leave as of February 28, 1991. Appellants urge the memorandum of agreement was only in operation for three years from the date of execution, as provided by R.C. 4117.09 (E). R.C. 4117.09 (E) provides: (E) No agreement shall contain an expiration date that is later than three years from the date of execution. The parties may extend any agreement, but the extensions do not affect the expiration date of the original agreement.
The City maintains the 1991 memorandum of agreement is permanent, and was clearly intended by the parties to document a permanent change. The City urges we view the memorandum in the context of the parties' intention. The group of firefighters affected by the change was set as of the date the memorandum was executed. It was a one-time permanent change which would not affect any firefighter hired after February 28, 1991. The city urges it was unnecessary to renew the memorandum, because the individual changes had been incorporated into each members permanent personnel file, and because the changes had fully implemented. We note the language in the later contract makes no reference to the "red circled" amount, and the only language provided requires unused leave be paid out at the member's hourly rate. Appellants point out there was nothing which would have prevented the City from proposing the "red circle" provision for the succeeding collective bargaining agreement. The City cites us no case law in support of its assertion the memorandum agreement is permanent and unaffected by the R.C. 4117.09 three-year maximum. This court's research into the issue disclosed no authority. R.C. 4117.09 does not contain a definition of what constitutes an agreement for purposes of Subsection (E), the mandatory three-year expiration date. The statute does provides a collective bargaining agreement must be reduced to writing executed by both parties, and must include provisions for grievance procedures and union dues. R.C. 4117.01
likewise does not define the term "collective bargaining agreement" although Subsection (G) defines "to bargain collectively" as to perform the mutual obligation . . . to negotiate . . . with respect to wages, hours, terms, and other conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. The language of R.C. 4117.09 (E) is mandatory, and provides no agreement may contain an expiration date later than three years from the date of execution, and further, that an extension by the parties does not affect the expiration date of the original agreement. We find the language of the statute does not permit the city to claim some provisions of an agreement between the city and its employees regarding conditions of employment can be permanent. The legislative intent is certainly clear. We find pursuant to Ohio law a memorandum of agreement can only be valid for a maximum period of three years from its execution. When the parties executed the new collective bargaining agreement, which omitted the "red circle" provisions, and when the parties did not extend or renew the memorandum of agreement, the provisions therein expired by action of law as well as by contract. We find the language applicable to Captain Ruby's leave is the language of 1994 collective bargaining agreement, which provides his payoff rate for all unused leave is his regular hourly rate at the time he left employment. The first assignment of error is sustained.
 II
Appellant next urge the arbitrator's award violated federal law. We find we need not reach this issue because of our holding in II, supra, and accordingly we overrule this assignment of error as moot.
 III
Finally, appellants urge the arbitrator's award did not draw its essence from the agreement and was contrary to the express language of the agreement. The arbitrator applied the 56-hour rate to leave time earned after 1991, and to amounts in excess of the "red circle" amount. In light of our holding in I, supra, we sustain the third assignment of error.
For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is reversed, and the cause is remanded to the arbitrator with instructions to compute the proper award pursuant to law and consistent with this opinion.
By Gwin, J., Wise, P.J., and Hoffman, J., concur