CLEARVIEW EDUCATION ASSOCIATION, OEA/NEA, et al., Appellees,

v.

CLEARVIEW LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellant.

[Cite as *Clearview Edn. Assn., OEA/NEA v. Clearview Local School Dist. Bd. of Edn.* (2001), 141 Ohio App.3d 366.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 00CA007678.

Decided Feb. 7, 2001.

*Kathleen K. McKinley*, for appellees.

*David K. Smith, Scott C. Peters* and *Matthew J. Markling*, for appellant.

---

WHITMORE, Judge.

Appellant Clearview Local School District Board of Education has appealed from a judgment of the Lorain County Common Pleas Court that affirmed an arbitrator's award in favor of appellees Clearview Education Association, OEA/NEA, and Nathan Newman. This court reverses.

## I

At the conclusion of the 1999 high school football season, the head coach of the Clearview varsity football program resigned. The Clearview Local School District Board of Education ("the board") posted the vacancy and established a screening committee. First, the committee entertained three applicants from within the school system: two teachers and one assistant principal. The screening committee then opened the process to non-system applicants. Thereafter, the board offered the position to Dan Parent, an assistant principal within the school system and athletic director. He was one of the original three applicants but not a member of the school system's bargaining unit.

In turn, Nathan Newman, a teacher within the school system, a member of the Clearview Education Association[1] ("the association") and one of the unsuccessful applicants for the posted position, filed a grievance, believing the board's action to

---

1. The Clearview Education Association is the exclusive bargaining representative for all teachers employed within the Clearview Local School District.

be outside the collective bargaining agreement ("the CBA").[2]  The grievance was submitted to an arbitrator, who ultimately ruled in favor of Newman and the association, holding that Newman should have received the job and that the board's failure to award the head varsity football coach position to a member of the bargaining unit constituted a violation of the CBA.

Thereupon, Newman and the association filed a complaint, a motion to confirm the arbitration award, and a motion for a temporary restraining order in the Lorain County Common Pleas Court.  They sought the confirmation of the arbitration award.  The board also filed, simultaneously, a complaint and motion to vacate the same.

After a hearing on the matter, the common pleas court entered a temporary restraining order prohibiting the board from hiring Parent. Subsequent to briefing by each side, the common pleas court entered judgment, denying the board's motion to vacate, granting Newman and the association's motion to confirm, prohibiting the board from hiring Parent, and directing it, instead, to employ Newman as the head varsity football coach.  The board timely appealed, asserting two assignments of error.  Its arguments will addressed together for ease of discussion.

## II

### First Assignment of Error

"The [common pleas] court erred to the prejudice of [the board] by granting [Newman and the association's] motion to confirm and temporary restraining order and in denying [the board's] motion to vacate the arbitrator's award in violation of R.C. 2711.10(D)."

### Second Assignment of Error

"The [common pleas] court misapplied the standards of review of arbitration awards."

The board has argued that the common pleas court applied the wrong standard of review and erred when it did not vacate the arbitrator's award because the arbitrator had exceeded his authority by granting an award that conflicted with the express terms of the CBA. The board has claimed that the arbitrator misapplied the express language of the CBA and, in a sense, unilaterally added terms not previously agreed upon by the parties.  Specifically, the board has argued that it had the authority to hire Parent because the CBA defines positions

---

2.  The CBA establishes the terms and conditions of employment for teaching employees in the system.  The current CBA became effective August 1, 1998, and expires on July 21, 2001.

within the bargaining unit as those under a teaching contract, while expressly excluding supplemental duties under R.C. 3313.53, *i.e.*, coaching positions. The board has also submitted that such an interpretation is supported by past practice. Finally, the board has argued that its authority is limited only by the express terms of the CBA and that the agreement is void of any language preventing or even restricting the actions taken in this case. Stressing that this challenge is not grounded in factual or legal error, the board has maintained that the arbitrator acted contrary to and exceeded the power vested in him through the parties' agreement. Thus, it has asserted that the common pleas court erred by failing to vacate an irrational and illegitimate award.

In turn, Newman and the association have claimed that the common pleas court properly confirmed the arbitrator's award because, based on the terms of the CBA and the fact that the head varsity football coach had always been a member of the bargaining unit in the past, the coaching position was indeed a bargaining-unit position. As a result, they have contended, the board should have offered the job to a bargaining-unit member. In support of their position, they have directed this court's attention to the CBA, where it is stated: "The unit shall include * * * anyone employed to perform any work currently being performed by bargaining unit members." Based on this language, Newman and the association have suggested that the vacancy should have been first presented to bargaining-unit members alone and, only if the board failed to receive any applications, would it be free to offer the position to individuals outside the bargaining unit, such as an assistant principal.

In reviewing an arbitrator's award, Ohio courts are bound by R.C. 2711.10, which provides:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"* * *

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802, 805, the Ohio Supreme Court restated the proper standard of review a court must use when evaluating an arbitrator's decision, to wit: "The arbitrators award will not be vacated so long as the award 'draws its essence from the collective bargaining agreement.'" See, also, *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 273, 690 N.E.2d 1262, 1265–1266. This court would observe, however, that while both common pleas

and appellate courts in Ohio must accord considerable latitude to an arbitrator, his or her powers are not unlimited in the resolution of labor disputes. See *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11 AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71, 73–74.

In *United Steelworkers of Am. v. Enterprise Wheel Car Corp.* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428, the United States Supreme Court cautioned that an arbitrator does not sit to dispense his or her own brand of industrial justice. While an arbitrator may look for guidance from many sources, the award is legitimate only so long as it draws its essence from the collective bargaining agreement. *Id.* An arbitrator departs from the essence of a collective bargaining agreement when the award conflicts with the express terms of the collective bargaining agreement, is without rational support, or cannot be rationally derived from the terms of the agreement. *Ohio Office of Collective Bargaining,* 59 Ohio St.3d at 183, 572 N.E.2d at 76–77. Stated another way, an arbitrator is confined to the interpretation and application of the collective bargaining agreement and cannot disregard or modify plain and unambiguous provisions. *Id.,* quoting *Detroit Coil Co. v. Internatl. Assn. of Machinists Aerospace Workers, Lodge No. 82* (C.A.6, 1979), 594 F.2d 575, 580. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. Accordingly, this court must determine whether the arbitrator in this case exceeded his authority by reaching his decision in an irrational manner not based on the plain language of the collective bargaining agreement. See *Ohio Office of Collective Bargaining,* 59 Ohio St.3d at 180, 572 N.E.2d at 73–74.

This court begins with a review of the CBA. Section 1:01, Article I, which provides:

"A. The bargaining unit shall consist of all regular full-time and regular part-time certificated personnel employed by the Board under a regular teaching contract. Regular part-time certificated teachers are those who are contracted to work on a regularly scheduled basis a minimum of ten (10) hours per week. The unit shall include all classroom teachers K–12, special, vocational, guidance counselors, librarians, subject area coordinators, full-time substitutes, psychologists, tutors, home-school counselors, head teachers, department heads and anyone employed to perform any work currently being performed by bargaining unit members.

"B. Excluded from the unit are substitutes employed on a casual or day-to-day basis as outlined in O.R.C. 3319.10, part-time tutors, persons employed for supplemental duties under O.R.C. 3313.53, Superintendent, Principals, Assistant

Principals and other Administrative positions defined in Chapter 4117 Ohio Revised Code[.]"

Section 10:12, Article X, states:

"TEACHER–INITIATED TRANSFERS

"A. All bargaining unit positions which occur shall be posted for a period of five (5) calendar days (excluding weekends and holidays).

"B. Vacancies will be posted on the basis of certification and qualifications.

"C. Vacancies will be filled on the basis of certification and qualifications. If there is a question of qualifications, the issue will be submitted to expedited arbitration[.]"

Section 30.01, Article XXX, provides:

"The Board retains and reserves without limitation, all power, rights, authority and responsibilities conferred upon and vested in it by law, except as specifically limited by the express terms of this agreement."

After reviewing the appropriate standard of review, the applicable law and the terms of the CBA in this case, this court concludes that the actions of the common pleas court were in error. Based on the catchall provision in Section 1:01(A), Article I, the arbitrator built his analysis around the conclusion that the head varsity football coach position was a bargaining-unit position and held then that the terms of Section 10:12, Article X, and past practice required the board to offer the position to Newman, a bargaining-unit member. On the contrary, Section 1:01(B), Article I, expressly excludes all supplemental duty positions under R.C. 3313.53 from the bargaining unit.[3] Coaching positions fall into that category. As such, the arbitrator's premise that the job was a bargaining-unit position was ill-founded,[4] Section 10.12, Article X, has no application, and the board was not obligated to fill the head varsity football coach position like other positions as outlined in the CBA. To buttress this interpretation, Section 30.01,

---

**3.** Were this court to accept the association's proposition that when a member of the bargaining unit takes a second position with the school district, outside the bargaining unit, that the second post magically becomes part of the bargaining unit, then its position that Parent is not a member of the unit becomes untenable. Indeed, Parent serves as the Clearview Athletic Director, and the association has stated that that position is within the bargaining unit. Nevertheless, this court concludes that supplemental positions under R.C. 3313.53 are not within the bargaining unit pursuant to Section 1:01(B), Article I.

**4.** The association's past practice argument also fails. The fact that bargaining-unit members previously held the head varsity football coach position does not, as a matter of deduction, reduce that job to a bargaining-unit position. It simply means that the most qualified candidate was already a member of the unit.

Article XXX, clearly reserves all powers to the board that are not otherwise specifically limited in the CBA.

Thus, in the end, the common pleas court erred by not vacating the arbitrator's award. The essence of the CBA requires the board first to offer bargaining-unit members vacancies within the unit. Coaching positions are not bargaining-unit positions. The CBA further manifests an intent to reserve to the board all power not expressly limited therein, and no restraints with regard to the filling of supplemental positions are present. The arbitrator's award dramatically departs from these premises. Indeed, the decision was made with unmistakable disregard of the express terms of Section 1:01(B), Article I, and Section 30.01, Article XXX. Hence, this court has no choice but to conclude that the decision is irrational and illegitimate. The board's first assignment of error is well taken.

### III

The board's assignments of error are sustained. The judgment of the common pleas court is reversed, the arbitrator's award is vacated, and the order prohibiting appellant from hiring Dan Parent is dissolved. App.R. 12(B).

*Judgment reversed.*

BATCHELDER, P.J., and CARR, J., concur.