OPINION
{¶ 1} Appellant, the City of Reynoldsburg, appeals from the judgment of the Franklin County Court of Common Pleas which denied appellant's motion to vacate an arbitrator's award and granted a motion by appellee, the Fraternal Order of Police, Capital City Lodge No. 9, to confirm the arbitrator's award. For the reasons stated below, we affirm the judgment of the trial court.
 {¶ 2} In 2001, Reynoldsburg Police Officer Joseph Vincent applied for 320 hours of extended leave, pursuant to the Family Medical Leave Act ("FMLA"), due to the pending birth of his child. Appellant granted Vincent's leave request, and he commenced leave in August 2001. Pursuant to the collective bargaining agreement ("agreement") governing the parties in this matter, during his FMLA leave, Vincent was first required to be compensated using his paid sick leave, then his vacation leave. Vincent had accrued enough sick leave to cover the entire period of his absence.
 {¶ 3} Just prior to the conclusion of his leave, Vincent left his wife and newborn child at home to go on a five-day hunting trip in Michigan. It is undisputed that, before the trip, Vincent informed his supervisors of his plans and that his supervisors did not object. Upon Vincent's return to work, appellant conducted an investigation and concluded that Vincent had misused his sick leave to go on the hunting trip. Finding Vincent in violation of General Order 26.1.4.117 of the agreement, appellant gave Vincent a documented warning of "misuse of sick leave."[1] Appellee filed a grievance alleging that the warning violated Sections 11.1 and 35.1 of the agreement because appellant did not give Vincent advance notice that sections of the agreement relating to sick leave would be applied to an employee on FMLA leave.
 {¶ 4} Section 11.1 of the agreement provides:
* * * The City agrees that, to the extent practicable, work rules and/or Departmental directives shall be reduced to writing and provided to all members in advance of their enforcement.
 {¶ 5} Section 35.1 provides, in part:
A. Pursuant to the Family and Medical Leave Act of 1993, FMLA leave may be granted to a member * * * for the following reasons:
1. Because of the birth of a child * * * [.]
* * *
A member seeking FMLA leave must first use paid sick time (if applicable), vacation and holidays before going on unpaid leave. * * *
It is intended that this article will comply with the Family and Medical Leave Act of 1993 and the City may promulgate policies in furtherance of the Family and Medical Leave Act that are not inconsistent with this agreement.
 {¶ 6} The matter came before an arbitrator pursuant to the terms of the agreement. In his October 2002 decision, the arbitrator summed up the parties' positions as follows:
* * * The Lodge would phrase the issue as whether there was just cause for the documented warning and whether Ofc. Vincent violated General Order 26.1.4.117. The City would phrase the issue as whether the grievance is arbitrable and whether the documented warning violated Section 11.1 or 35.1 of the collective bargaining agreement.
 {¶ 7} Although the arbitrator recognized that Section 10.4 of the agreement, by its terms, only applies to major disciplinary actions, he held that Section 9.1(J) of the agreement, subjecting all disciplinary actions to the requirement of "cause," rendered the matter appropriate for arbitration.[2] Regarding the merits of the case, the arbitrator agreed with appellant that the purpose of the FMLA was not to allow an employee "the unrestricted right to use the time off in any manner he or she chooses," and that disciplinary action against an employee for using FMLA leave for a hunting trip would not violate the FMLA. Nevertheless, the arbitrator determined that, in order for the warning to be based upon just cause, General Order 26.1.4.117 must have afforded reasonable notice to Vincent that his hunting trip would constitute misuse of sick leave. With regard to this issue, the arbitrator stated:
The General Order does not seem to have been drafted with FMLA leave in mind. Its title `Failure to report due to illness' suggests that its provisions were intended only to address the employee's own illness. While this would relate to one of the four circumstances (`a serious health condition that makes the employee unable to perform the functions of the position') affording the right to FMLA leave, the other three circumstances (birth of a child, adoption, serious health condition of certain relatives) addressed by the FMLA do not seem to have been contemplated when the General Order was drafted. * * *
While the General Order, by its terms, applies "when an employee is on sick leave" it would not be unreasonable to regard an employee on FMLA leave as being on FMLA leave rather than sick leave, even though the absence was allocated to sick leave for payroll purposes. It is useful to keep in mind in this respect that, depending on the amount of various types of leave an individual had accumulated, a week of FMLA leave might be covered by sick leave, vacation, and unpaid leave.
In fact, as a number of witnesses testified, they did not regard FMLA leave that was designated as sick leave for accounting and payroll (other than when due to the employee's own illness) as being covered by the General Order. * * *
 {¶ 8} Admitting that appellant's reading of the General Order as prohibiting Vincent's hunting trip while he was drawing sick leave "might be a close call under the `cause' standard," the arbitrator found persuasive the fact that, when Vincent advised his supervisors of his plans, they did not indicate that his trip would violate the General Order, that it should be categorized as vacation leave, or that the trip should be cleared with the police chief. The arbitrator concluded:
* * * Under the circumstances, the City's silence after being informed of Ofc. Vincent's planned trip, must be taken as assent. It would be unfair and inconsistent with the "cause" standard for management to lead Ofc. Vincent to believe that there was no problem with taking a hunting vacation while on FMLA leave, and afterward to discipline him for the same conduct.
 {¶ 9} On appeal, the trial court affirmed the arbitrator's decision in March 2003. Noting that, when a collective bargaining agreement is capable of more than one interpretation, courts must defer to the interpretation of the arbitrator, the court agreed with appellee that the grievance was arbitrable. Addressing whether the arbitrator exceeded his power, thus meriting a vacation of the award pursuant to R.C. 2711.10(D), the court held:
* * * The arbitrator's written decision sets forth sound reasoning and logic as the basis of such interpretation of the Agreement. The court finds that the arbitrator's award does not conflict with the Agreement's express terms, nor is the award without rational support. As such, the court finds that the arbitrator's decision draws its essence from the Agreement, is not arbitrary, capricious or unlawful, and thus, the court's inquiry for purposes of vacating the arbitrator's award pursuant to R.C. 2711.10(D) is at an end. * * *
 {¶ 10} Appellant now assigns the following as error:
The Court of Common Pleas erred in not vacating the Arbitrator's award.
 {¶ 11} In agreeing to submit disputes to arbitration, the parties to a collective bargaining agreement agree to accept the result of arbitration, even if it is legally or factually wrong. Huffman v.Valletto (1984), 15 Ohio App.3d 61, 63. Pursuant to R.C. 2711.10(D), the court of common pleas may vacate an arbitration award upon a finding that "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." In determining whether an award exceeds the arbitrator's powers, the test is whether: "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." Ohio Office of Collective Bargaining v. Ohio Civil ServiceEmployees Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, syllabus. Once a reviewing court determines that an arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, the court's inquiry is at an end. See, e.g., Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.
(1990), 49 Ohio St.3d 129, syllabus; Cleveland Police Patrolmen's Assn.v. Cleveland (1994), 99 Ohio App.3d 63. Appellate review of arbitration awards is limited to an evaluation of the trial court's order to determine whether the court erred in vacating, or in refusing to vacate, the arbitrator's award. See Endicott v. Johrendt (Apr. 30, 1998), Franklin App. No. 97APE08-1122, citing Nester v. Nester (May 23, 1995), Franklin App. No. 94APF09-1359.
 {¶ 12} Appellant urges that the arbitrator exceeded his authority in this matter because the issue of just cause was never submitted for review, and because the language of the agreement did not allow for the filing of grievances against, or the arbitration of, documented warnings. According to appellant, the specificity of Article 10 of the agreement, which, in appellant's view, only permits the appeal of "suspension, reduction or removal" actions, supercedes more general provisions in the agreement, and the arbitrator exceeded his authority by interpreting Article 10 as permitting the grievance of minor disciplinary actions.
 {¶ 13} Appellee counters that nothing in the agreement restricts arbitration to disciplinary actions resulting in loss of pay, and that the arbitrator properly found the stated purpose of Article 10 is to give employees subjected to the more serious penalties of suspension, reduction or removal, a choice of remedies. Appellee additionally asserts that, pursuant to Article 9, Section 9.1(J) of the agreement, all disciplinary actions are subject to the requirement of just cause, and, under Article 5, Section 5.1, a grievance is defined as any unresolved question or dispute, and not simply as those disputes related to loss in pay.[3]
 {¶ 14} The arbitrator reviewed all of these sections of the agreement and concluded that the documented warning, because it was a disciplinary action against Vincent, and because it created an unresolved dispute between Vincent and appellant, was appropriately subject to the grievance procedure and, to be justified, was required to have been based upon just cause. Our review of the trial court's decision, the arbitrator's decision, and the language of the agreement, convinces us that the trial court did not err in determining the arbitrator's finding regarding arbitrability drew its essence from the collective bargaining agreement and so was not unlawful, arbitrary or capricious.
 {¶ 15} Appellant additionally argues that, even if the matter was arbitrable, just cause was present for the documented warning against Vincent, and that appellee lacked standing to grieve the warning because, pursuant to Article 10, Section 10.4, only Vincent could prosecute his grievance against appellant. The facts of this matter simply do not support appellant's argument that there was just cause for the disciplinary action taken against Vincent. As noted by the arbitrator, it was improper for appellant to lead Vincent to believe the hunting trip was acceptable, and then discipline him for taking it.
 {¶ 16} Regarding the issue of standing, other than mentioning that Article 5 of the agreement permits a grievance to be initiated "by the Lodge or an aggrieved member," the trial court did not address this issue. The arbitrator's decision stated:
* * * [T]he City challenges the filing of the grievance by the Lodge, rather than Ofc. Vincent himself. The first sentence of Section 5.2 provides "A grievance can be initiated by the Lodge or an aggrieved member." The next sentence addresses "group" grievances signed by individual members. The following sentence states "The Lodge, through the Grievance Chairman, shall have the right to file a grievance if an alleged violation affects two (2) or more members." It is possible to read this sentence as providing an alternative to the" group" grievance situation covered by the prior sentence. It is also possible to read this sentence as limiting the circumstances under which the Lodge can file a grievance, which would otherwise be quite broad under the first sentence of the paragraph.
I need not determine which possible reading of this sentence is the correct one. Even under the more restrictive reading of the Lodge's right to file a grievance, I conclude that the current grievance is one that does affect multiple members. Many members of the Department have used FMLA leave in connection with the birth of children, and thus the issue of the applicability of the General Order while an employee is on FMLA leave, at least when sick leave is applied to such leave, is a question that affects multiple members of the Department.
 {¶ 17} We find there was ample language in the agreement to support the arbitrator's conclusions, both with regard to appellant's lack of just cause for disciplining Vincent and with regard to the issue of appellee's standing to file a grievance on Vincent's behalf. Based upon these considerations, the trial court did not err in determining the arbitrator did not exceed his powers by issuing an award which conflicts with the express terms of the agreement, or by rendering an award lacking support from the terms of the agreement. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and Watson, JJ., concur.
[1] General Order 26.1.4.117 states:
"When an employee is on sick leave, he/she will be considered confined to his/her home. The only exceptions to this are as follows:
"1. when receiving medical treatment,
"2. obtaining medication,
"3. engaging in religious worship,
"4. exercising his/her right to vote,
"5. obtaining basic necessities, or
"6. convalescing at another residence.
"When an employee leaves his/her home for any purpose, he/she is required to notify the on duty supervisor of his/her departure, estimated length of absence and return."
[2] Section 10.4 provides:
"* * * If suspension, reduction or removal is imposed as a result of the disposition of the Departmental hearing, a member, with the approval of the Lodge President, may appeal such decision directly to binding arbitration under the provisions of Article 6 within twenty (20) days after the order is received. In lieu of proceeding directly to arbitration, a member may appeal the decision to impose disciplinary action to the Civil Service Commission, as provided in the Civil Service Commission Rules. If the Civil Service Commission accepts jurisdiction over the member's appeal, the member is precluded from proceeding to arbitration."
Section 9.1 provides:
"* * * Except where otherwise specifically limited by this Contract, the City retains right and responsibility to:
"* * *
"J. Discharge, remove, demote, reduce, suspend, reprimand or otherwise discipline employees for cause[.]"
[3] Article 5, Section 5.1 defines grievance as "any unresolved question or dispute based upon the misinterpretation, misapplication or violation of this Contract."
Section 5.2 provides:
"* * * A grievance can be initiated by the Lodge or an aggrieved member. * * * The Lodge, through the Grievance Chairman, shall have the right to file a grievance if an alleged violation affects two (2) or more members.
"A member has the right to present grievances and have them adjusted, without the intervention of the Lodge, as long as the adjustment is consistent with the terms of this Contract and as long as the Lodge has the opportunity to be present at the adjustment."