OHIO OFFICE OF COLLECTIVE BARGAINING, APPELLEE, *v.* OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION, LOCAL 11, AFSCME, AFL-CIO, APPELLANT.

[Cite as Ohio Office of Collective Bargaining *v.* Ohio Civil Service Employees Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St. 3d 177.]

(No. 90-361—Submitted January 22, 1991—Decided May 15, 1991.)

*Linda K. Fiely, Anne Light Hoke* and *Brian J. Eastman,* for appellant.

*Lee I. Fisher,* attorney general, and *Gregg H. Bachmann,* for appellee.

*Susan G. Tobin* and *Shane Egan,* urging affirmance for *amicus curiae,* Ohio Legal Rights Service.

HOLMES, J. The central issue in this case is whether the arbitrator exceeded his authority in reinstating Dunning to her former position. For the reasons that follow, we answer this query in the affirmative.

In its first proposition of law OCSEA asserts that the appellate court erred in determining that the arbitrator exceeded his authority based upon the interpretation of the parties' collective bargaining agreement. We disagree.

In reviewing an arbitrator's award, courts are bound by R.C. 2711.10, which provides in part:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"* * *

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Furthermore, in *Goodyear Tire & Rubber Co.* v. *Local Union No. 200* (1975), 42 Ohio St. 2d 516, 71 O.O. 2d 509, 330 N.E. 2d 703, paragraph one of the syllabus, certiorari denied (1975), 423 U.S. 986, we held that:

"A mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence from a collective bargaining agreement. (*United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, followed.)"

In *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.,*

*supra,* the United States Supreme Court cautioned that "* * * an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.* at 597. Thus, we will accord considerable latitude to an arbitrator, but we recognize his powers are not unlimited in the resolution of labor disputes. "The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co.* v. *Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82* (C.A.6, 1979), 594 F. 2d 575, 579; see, also, *General Drivers, Warehousemen & Helpers, Local Union No. 89* v. *Hays & Nicoulin, Inc.* (C.A.6, 1979), 594 F. 2d 1093; *United Paperworkers' Internatl. Union* v. *MISCO, Inc.* (1987), 484 U.S. 29, 38. Accordingly, it is our duty to determine whether the arbitrator's award was reached in a rational manner from the collective bargaining agreement. See *Detroit Coil, supra; Timken Co.* v. *Local Union No. 1123, United Steelworkers of America* (C.A.6, 1973), 482 F. 2d 1012, 1015.

The United States Court of Appeals, First Circuit, was confronted with a situation similar to the one at bar in *S.D. Warren Co.* v. *United Paperworkers' Internatl. Union*[3] (C.A.1, 1988), 845 F. 2d 3, certiorari denied (1988), 488 U.S. 992 (*"Warren 1"*), and its companion case *S.D. Warren Co.* v. *United Paperworkers' Internatl. Union* (C.A.1, 1988), 846 F. 2d 827, certiorari denied (1988), 488 U.S. 992 (*"Warren 2"*). In these cases the arbitrator could not modify discharges that were based upon "proper cause." Specifically, as stated by the court, the management rights clause provided that " '[t]he Company reserves the *sole* right to manage the business of the Company and to direct the working force.' (emphasis supplied). This *sole* 'right includes but is not limited to . . . the right to . . . discharge employees for proper cause . . . .*" Warren 1, supra,* at 6. Furthermore, among the causes listed for discharge appended to the parties' contract were "* * * [p]ossession, use or sale on Mill property of . . . marijuana . . . ." *Id.* The parties agreed that the scope of the arbitrator's authority was " 'concerned solely with the interpretation and/or application of the collective bargaining agreement,' " and that " 'the arbitrator shall have no power to render a decision which in any way modifies any provision of the agreement.' " *Id.* In *Warren 1,* as a consequence of a police undercover operation, twelve employees were discharged for possessing, using or selling marijuana. The union filed a grievance regarding three of the employees. The arbitrator found, beyond a reasonable doubt, that the employees had violated the drug rules, but rejected the employer's position that the plain meaning of the contract provided for immediate discharge for the violations. *Id.* at 6. See, also,

---

[3] For a complete factual background, see *S.D. Warren Co.* v. *United Paperworkers' Internatl.* (C.A.1, 1987), 815 F. 2d 178, vacated and remanded (1987), 484 U.S. 983.

*S.D. Warren* v. *United Paperworkers' Internatl.* (D.Me. 1986), 632 F. Supp. 463, 465-466. In *Warren 1* and *Warren 2* the First Circuit concluded that the arbitrator had exceeded her contractual authority in overturning the employees' discharges. The *Warren 1* court held that the penalty for drug violations had been predetermined. *Id.* at 8. The court went on to state that "[n]othing is left to the arbitrator's judgment except determining whether the rules are violated. An uncomplicated reading of the contract reveals that management has the *sole* right to discharge employees for cause, the definition of which includes possession of marijuana on Mill property. It is not a question of a strained interpretation by the arbitrator with which we might agree or disagree, but rather a reading of the plain language of the contract which removes from the arbitrator the authority to determine a remedy once she concludes that a certain rule has been breached." *Id.*

In *Georgia-Pacific Corp.* v. *Local 27, United Paperworkers' Internatl. Union* (C.A.1, 1988), 864 F. 2d 940, the First Circuit again was faced with the question of an arbitrator's authority to interpret disciplinary provisions of a collective bargaining agreement, somewhat analogous to those in the case at bar. In *Georgia-Pacific* an employee who had been injured was allowed job absences when his injury made him unable to work. *Id.* at 941. On several occasions the injured employee notified the company that he would be absent due to his injury, and he received workers' compensation from the company for the hours he would have worked in such instances. *Id.* On one occasion, Georgia-Pacific found out that its injured employee had played eighteen holes of golf in a pro-amateur tournament one hundred fifty miles from home on a day when he called in sick. Consequently, the employer discharged the employee for dishonesty. *Id.* at 942. The pertinent portion of the parties' collective bargaining agreement read:

"B. Causes for Discharge

"1. Any employee may be discharged for just cause. Without limiting the generality of the foregoing some of the causes for immediate discharge are:

"* * *

"(5) dishonesty

"2. Some of the causes for discharge after proper warning has been given are:

"(1) reading a book, newspapers, etc., while on duty.

"(2) failure to report for duty without good reason.

"* * *

"3. * * * Any employee found under the grievance procedure to have been discharged without just cause shall be reinstated and shall receive pay for time lost." *Georgia-Pacific, supra,* at 9-12.

In interpreting this portion of the collective bargaining agreement the arbitrator concluded that the language was unambiguous on its face in allowing the company to discharge the employee immediately for dishonesty, but that the company in this instance lacked just cause to discharge. *Id.* at 943. The *Georgia-Pacific* court vacated the arbitrator's award, finding that:

"* * * The language of the agreement is unequivocal in that it establishes two *independent* justifications for dismissal: 1) just cause and 2) a list of offenses, including dishonesty, for which immediate discharge is appropriate. * * * The language in this agreement is unambiguous that once dishonesty is established, no further showing is required. In essence, dishonesty, as a ground for immediate discharge, is *per se* just cause.

"* * * Accepting the union's argument, this list at best would be a very

brief, non-exhaustive list of factors that could, but need not, be considered in a just cause analysis. It would be surprising then that mitigating factors on behalf of the Union also were not included.* * *" *Id.* at 944-945.

Further, the court noted that "[t]he arbitrator, using reasoning reminiscent of an Alice in Wonderland fantasy,[4] held that although he lacked 'normal authority' to mitigate the discharge penalty because of the circumstances of the offense, nevertheless concluded that he possessed 'normal authority' to mitigate on the basis of * * * [the employee's] overall employment record." *Id.* at 945. The court concluded that the arbitrator's actions were an abuse of power. *Id.* Thus, upon reaching the conclusion that the employee committed an act of dishonesty, which subjected him to discipline, "the arbitrator was barred from further inquiry because such additional probing constituted 'ignor[ing] the plain language of the contract.'" *Id.*, quoting *MISCO, Inc., supra,* at 38.

In the collective bargaining agreement at issue, the parties agreed in Section 25.03 that:

"* * * Only disputes involving the interpretation, application or alleged violation of a provision of the Agreement shall be subject to arbitration.

*The arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement, nor shall he/she impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement."* (Emphasis added.)

Furthermore, the agreement set forth the appropriate standards of discipline in Section 24.01, which provided in pertinent part:

"Disciplinary action shall not be imposed upon an employee except for just cause. The Employer has the burden of proof to establish just cause for any disciplinary action. In cases involving termination, if the arbitrator finds that there has been an abuse of a patient or another in the care of the State of Ohio, *the arbitrator does not have authority to modify the termination of an employee committing such abuse."* (Emphasis added.)

Here, the arbitrator specifically found that Dunning committed abuse, but chose to reinstate her because of the employer's violation of the just-cause requirement in Section 24.01, which impliedly required notice and fair treatment like that afforded to similarly situated grievants.[5]

Apparently, the arbitrator grafted a just-cause requirement onto the clause governing termination for

---

[4] "'When I use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.'

"'The question is,' said Alice, 'whether you can make words mean so many different things.'

"'The question is,' said Humpty Dumpty, 'which is to be master — that's all.' L. Carroll, *Through the Looking-Glass and What Alice Found There,* Chapter 6." *Georgia-Pacific, supra,* at 945, fn. 3.

[5] After finding a just-cause requirement for terminations for abuse under Sec-

tion 24.01, the arbitrator cited the employer with notice and fair treatment violations. Specifically, the arbitrator noted that the parties had negotiated specific requirements of notice, and the employer failed to provide Dunning with adequate notice of the reasons supporting the contemplated discipline. Moreover, he indicated the employer neglected to inform the grievant of the possible form of discipline, and that the employer failed to adequately distinguish prior disciplinary decisions which did not involve employee removal from the case at bar.

abuse,[6] thereby violating the clear and unambiguous terms expressed in the agreement. We recognize that an arbitrator departs from the essence of a collective bargaining agreement when: "(1) an award conflicts with express terms of the collective bargaining agreement, * * * [or] (3) an award is without rational support or cannot be rationally derived from the terms of the agreement. * * *" (Citations omitted.) *Cement Divisions, Natl. Gypsum Co.* v. *United Steelworkers of America* (C.A.6, 1986), 793 F. 2d 759, 766; *Dobbs, Inc.* v. *Local No. 614, Internatl. Bhd. of Teamsters* (C.A.6, 1987), 813 F. 2d 85, 86. Clearly, in the present case the arbitrator's interpretation of the clause governing termination for abuse failed to draw its essence from the agreement. Specifically, the arbitrator's award conflicted with the express terms of the collective bargaining agreement, imposed additional requirements for termination not expressly provided in the agreement, and could not be rationally derived from the terms of the agreement. The arbitrator created, in effect, a contract of his own, rather than applying the contract agreed to by the parties.

The conclusion that the arbitrator exceeded his authority is further strengthened by the legislative support for mentally retarded persons contained in R.C. Chapter 5123. The grievant

in this case was responsible for caring for a mentally retarded person. The patient was totally dependent on the grievant for care and direction. Thus, it is understandable that the parties in their agreement prohibited the arbitrator from modifying any termination for abuse. Returning Dunning to work would risk harm to those in the care and custody of the state. This was not a situation where the employee was fired for being late to work. In this instance the employee physically and verbally *abused* the patient in direct violation of the employer's rules and the rights declared in R.C. 5123.62, which provides in pertinent part:

"The rights of mentally retarded persons and of developmentally disabled persons include, but are not limited to:

"(A) The right to be treated at all times with courtesy and respect and with full recognition of their dignity and individuality;

"* * *

"(N) The right to be treated equally as citizens under the law;

"(O) The right to be free from *emotional, psychological,* and *physical abuse*[.]" (Emphasis added.)

Thus, the parties were prevented from making an agreement which would violate the rights contained in R.C. 5123.62. R.C. 5123.64.[7]

---

[6] Terms in a collective bargaining agreement shall be given their ordinary meaning in the absence of "evidence indicating that the parties to * * * [the] contract intended to expand or otherwise deviate from that meaning." *Detroit Coil* v. *Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82* (C.A.6, 1979), 594 F. 2d 575, 580; *Dobbs, Inc., supra,* at 88.

[7] R.C. 5123.64 provides in relevant part:
"(A) Every provider of services to

persons with mental retardation and developmental disabilities shall establish policies and programs to ensure that all staff members are familiar with the rights enumerated in section 5123.62 of the Revised Code and observe those rights in their contacts with persons receiving services. Any policy, procedure, or rule of the provider that conflicts with any of the rights enumerated shall be null and void. * * *"

Thus, reinstating an employee found to have abused a patient in violation of R.C.

Therefore, we hold that OCSEA's first proposition of law is overruled.

In its second proposition of law OCSEA maintains that the arbitrator was within the stipulated issues presented by the parties. The parties had stipulated that the issue for the second phase of their bifurcated hearing was whether there was just cause for dismissal.

As previously discussed, the arbitrator conducted a bifurcated proceeding. First, on October 31, 1987, the arbitrator issued his decision on the burden of proof and the definition of "abuse" as that term is used in Section 24.01 of the parties' collective bargaining agreement. Conceivably, the arbitrator could have determined that Dunning's acts amounted to something less than abuse, in which case an appropriate just-cause analysis would have been necessary under the agreement.

However, the arbitrator not only defined "abuse" in his first hearing, he further stated that the employer must have just cause for a termination associated with abuse. Consequently, the issue had already been framed by the arbitrator prior to the second half of the bifurcated proceeding. Obviously, the arbitrator was under the impression that the parties were in disagreement as to the requirement, if any, of just cause for termination for abuse. That being the case, nothing remained for the parties to stipulate to at the second hearing. The arbitrator exceeded his authority by misinterpreting and exceeding the conditions of the stipulation.

If the stipulation by the parties were accepted as providing a just-cause component to Dunning's termination, then the arbitrator would be permitted to exceed the express terms of the collective bargaining agreement. This result would run contrary to the requirement that an arbitrator's award may only be legitimate when it draws its essence from the collective bargaining agreement. See *Detroit Coil, supra,* at 579; *Enterprise Wheel, supra,* at 597; *Goodyear, supra,* at paragraph one of the syllabus. Alternatively, no just-cause analysis is required here because abuse is *per se* just cause. Therefore, the arbitrator was without authority to modify the penalty imposed under the clause governing termination for abuse. Consequently, we find OCSEA's second proposition wholly without merit.

OCSEA proposes in its third proposition of law that Dunning's due process rights were violated by the employer in not adequately notifying Dunning of the specific charges against her. We summarily overrule this proposition of law since the arbitrator's discussion of the notice given to Dunning was dependent upon a just-cause analysis, which has already been found to be inapplicable in this case.

Accordingly, for the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. The facts of this case may be succinctly set forth as follows.

Juliette Dunning was employed by the state of Ohio, Department of Men-

---

5123.62 would seemingly run counter to the express intent of the General Assembly's

protections for mentally retarded and developmentally disabled persons.

tal Retardation and Developmental Disabilities ("employer"), as a hospital aide at the Northwest Ohio Developmental Center ("center"). Effective October 29, 1986, Dunning was removed from her position as a hospital aide for allegedly "abusing" a resident at the center.

Pursuant to the terms of a collective bargaining agreement between the Ohio Civil Service Employees Association, Local 11, AFSCME, AFL-CIO ("OCSEA"), appellant, and appellee, the state of Ohio, Dunning, a member of OCSEA, filed a grievance challenging her removal. In accordance with the contract, the matter proceeded to arbitration.

OCSEA and the employer ("the parties") agreed to a bifurcated arbitration hearing. The object of the first phase of the arbitration hearing was to have the arbitrator establish a definition for the term "abuse" as that term is used in Section 24.01 of the collective bargaining agreement. The parties agreed that the arbitrator's contract interpretation of the term "abuse" would have statewide application and that the arbitrator was empowered to develop a reasonable definition for the term. The object of the second phase of the arbitration hearing was to determine if Dunning's removal was proper.

Section 24.01 of the collective bargaining agreement provides that:

"Disciplinary action shall not be imposed upon an employee except for just cause. The Employer has the burden of proof to establish just cause for any disciplinary action. In cases involving termination, if the arbitrator finds that there has been an abuse of a patient or another in the care or custody of the State of Ohio, the arbitrator does not have authority to modify the termination of an employee committing such abuse."

With regard to the first phase of the arbitration hearing, the arbitrator issued a written opinion defining the term "abuse." In this opinion, the arbitrator stated that:

"This contract interpretation analysis would be incomplete if the Arbitrator failed to discuss the inherent linkage between the definition of the term 'abuse', and the language contained in Section 24.01 * * * dealing with the scope of an arbitrator's authority. * * * The standard specified in * * * [Section 24.01] contains an explicit just cause requirement for *any* * * * disciplinary action. The sentence that follows does not modify but supplements the previous sentence. Thus, a determination that an abuse has been committed does not automatically guarantee that termination is the appropriate penalty. In other words, the Employer must establish that it had just cause to undertake the termination before it can allege that an arbitrator does not have the authority to modify a penalty. The purpose of this provision is to prevent an arbitrator from holding that an employee was terminated for proper cause on the basis of certain misconduct, but that termination for such misconduct should be reduced." (Emphasis *sic*.) (Footnote omitted.)

More than two and one-half months after the arbitrator issued his opinion regarding the definition of the term "abuse," the second phase of the arbitration hearing ensued. The issue(s) submitted to the arbitrator at this hearing were stipulated to by OCSEA and OCB as follows: "Whether the removal of Juliette Dunning was for just cause? If not, what shall the remedy be?"

In an "opinion and award" dated March 11, 1988, the arbitrator found that Dunning did engage in the conduct for which she was charged, *i.e.*, "abuse." However, the arbitrator held that Dunning was not removed from

186

her position for just cause because, according to the arbitrator, Dunning's employer violated certain terms of the contract in removing Dunning from her position. The arbitrator also found that the degree of discipline imposed upon Dunning was greater than that imposed upon a former employee who had engaged in similar conduct. Accordingly, the arbitrator ruled that Dunning be reinstated.

Pursuant to R.C. Chapter 2711, the Ohio Office of Collective Bargaining filed, in the Court of Common Pleas of Franklin County, a motion to vacate the arbitrator's March 11, 1988 award. The court of common pleas granted OCB's motion to vacate, finding that the arbitrator exceeded his authority. The court of appeals affirmed the judgment of the court of common pleas.

The matter is now before this court for final determination.

Today's majority concludes that the arbitrator, in awarding reinstatement for Dunning, exceeded his authority under the "express terms" of the collective bargaining agreement. Specifically, the majority concludes that the last sentence of Section 24.01 of the contract (which limits an arbitrator's authority to modify certain terminations) prohibited the arbitrator from modifying Dunning's termination.

I disagree. In the first phase of the arbitration hearing, the parties empowered the arbitrator to give meaning to the term "abuse" as that term is used in Section 24.01 of the contract. The arbitrator, in completing his task, indicated that the contract required just cause for any termination, including terminations for "abuse."

With the benefit of knowing how Section 24.01 would be interpreted by the arbitrator, the parties, in the second phase of the arbitration hearing,

*agreed* to submit to the arbitrator the issue(s) of whether Dunning was terminated for just cause and, if not, what the appropriate remedy should be. In doing so, it is my opinion that the parties (1) clearly expected the arbitrator to address the issue of just cause (*i.e.,* whether Dunning's termination was "just" and in accordance with the contract), even if "abuse" was found, and (2) provided the arbitrator with the authority to modify Dunning's termination if Dunning was found to have been terminated without just cause. If the employer merely had wanted the arbitrator to determine whether Dunning was guilty of "abuse," and had not wanted the arbitrator to determine whether Dunning was terminated for just cause, the employer would have framed the issue submitted to the arbitrator in a different manner. This is particularly true where, as here, the employer knew how Section 24.01 would be interpreted.

Accordingly, in my judgment, the parties provided the arbitrator with the authority to modify Dunning's termination *even if* it can be said that the express terms of the contract limit the arbitrator's authority to modify any termination for "abuse." In deciding whether an arbitrator exceeds his authority, it is important to determine whether the arbitrator's award goes beyond the stipulated issue presented to him by the parties to the arbitration. See, *e.g., United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593. In the case at bar, the arbitrator decided the very issue submitted to him in a manner which the parties to the arbitration must have contemplated. Thus, I believe that the arbitrator's award was clearly within the confines of the authority expressly conferred upon him and that, therefore, the arbitrator did not exceed his authority.

Furthermore, in any event, I disagree with the majority's conclusion that the arbitrator's award fails to "draw its essence" from the terms of the contract. Section 24.01 clearly states that "[d]isciplinary action shall not be imposed upon an employee except for just cause. The Employer has the burden of proof to establish just cause for any disciplinary action. * * *" Therefore, Section 24.01 requires just cause for *every* disciplinary action including, of course, terminations. However, Section 24.01 also provides that in cases involving terminations for abuse, the arbitrator has no authority to modify the termination.

The arbitrator, in interpreting Section 24.01, determined that terminations for abuse were not excepted from the just cause requirement, and if just cause existed for such a termination, there could be no reinstatement. Conversely, if there was no just cause for a termination for abuse, there could be no termination. Accordingly, upon finding that Dunning was not terminated fairly and in accordance with the contract, the arbitrator determined that Dunning was terminated without just cause and, hence, awarded reinstatement.

The majority reads Section 24.01 differently. The majority's interpretation of Section 24.01 is that once the arbitrator finds "abuse," an award of reinstatement is prohibited. This interpretation, however, fails to give effect to all the words and phrases used in Section 24.01. Specifically, this interpretation fails to give effect to the requirement in Section 24.01 regarding just cause for all disciplinary actions.

I do not agree with the decision of the arbitrator to reinstate Dunning. I believe that any proven abuse of a patient by an employee should result in termination of employment. However, while I would have ruled differently had I been the arbitrator, that does not give me the right to substitute my judgment for that of the arbitrator. The more we weaken this alternative method of dispute resolution, the less it will be used. Arbitration has served us well, and absent a clear and absolute violation by an arbitrator of the arbitrator's mandate and/or authority, the decision in arbitration should be upheld.

In my judgment, both the arbitrator's and the majority's interpretations of Section 24.01 are reasonable. As such, the arbitrator's interpretation prevails. See, *e.g.*, *Findlay City School Dist. Bd. of Edn.* v. *Findlay Edn. Assn.* (1990), 49 Ohio St. 3d 129, 551 N.E. 2d 186.

For the foregoing reasons, I would reverse the judgment of the court of appeals and order that the arbitrator's award be reinstated.

SWEENEY, J., concurs in the foregoing dissenting opinion.