[Cite as *H.C. Nutting Co. v. Midland Atlantic Dev. Co., L.L.C.*, 2013-Ohio-5511.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| H.C. NUTTING COMPANY, | : | APPEAL NO. C-130132 |
| | | TRIAL NO. A-1208064 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| MIDLAND ATLANTIC | : | |
| DEVELOPMENT COMPANY, LLC, | : | |
| | | |
| and | : | |
| | | |
| JOHN I. SILVERMAN, TRUSTEE, | : | |
| | | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 18, 2013

*Thompson Hine LLP, Thomas J. Kirkwood, Kimberly E. Ramundo* and *John B. Kopf, III*, for Plaintiff-Appellee,

*Frost Brown Todd LLC, Scott Brown, Matthew Blickensenderfer* and *Bonnie Wolf* for Defendants-Appellants.


Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}     Defendants-appellants Midland Atlantic Development Company, LLC, and John I. Silverman, Trustee, (collectively "Midland") appeal the trial court's judgment vacating an arbitration award in their favor against plaintiff-appellee H.C. Nutting Company ("H.C. Nutting").  Because the arbitrator exceeded his authority under the parties' contract by including, on the face of the award, consequential damages, which were expressly excluded by the parties' contract, we affirm the trial court's judgment vacating the award.

### I. Arbitration Proceedings

{¶2}     H.C. Nutting and Midland entered into a contract to perform testing, evaluation, and recommendations of the subsurface of soils on a proposed retail development site known as the Tylersville Farm Retail Center.  At a later date, H.C. Nutting also entered into a contract with Midland to provide construction testing and monitoring of various construction services being performed on the site.

{¶3}     A dispute arose over the settlement and repair of three buildings on the site, which had been constructed on a compacted fill monitored by H.C. Nutting. The parties' contract contained an arbitration clause, which provided in pertinent part:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Construction Industry Rules, *provided that any award is subject to the specific terms and conditions of this agreement*, including Section 6, Limitation of Liability and Section 7, Indemnity/Statute of Limitations.

2

(Emphasis added.)

{¶4} Midland commenced an arbitration proceeding with the American Arbitration Association against Reece Campbell and H.C. Nutting. Prior to the arbitration hearing, Reece Campbell paid $180,000 to Midland in settlement. Midland's insurance company also paid it $340,000 in settlement.

{¶5} Following a hearing, the arbitrator issued an award in favor of Midland in the amount of $256,767.36. In arriving at this figure, the arbitrator included a chart, which showed line by line the amount requested by Midland and the amount he was awarding. Among the categories included in the chart were lost revenue and recovery costs. The arbitrator also included attorney fees in the category of recovery costs. The arbitrator awarded Midland $61,624.44 in lost profits and $187,234.99 in attorney fees.

{¶6} At the conclusion of the arbitrator's line by line analysis, he totaled the amounts awarded on each line of claimed damage and awarded Midland a grand total of $776,767.36 in damages. He then offset the $520,000 Midland had received in its settlements with Reece Campbell and Midland's insurer. He ordered H.C. Nutting to pay Midland the sum of $256,767.36.

## II. Trial Court Proceedings

{¶7} H.C. Nutting filed a motion in the common pleas court to vacate the arbitration award, arguing that the arbitrator had exceeded his powers by: (1) awarding attorney fees; (2) awarding lost revenue when the contract expressly precluded consequential damages; and (3) awarding an amount in excess of the agreed limitation on damages. Midland opposed the motion and filed a separate motion to confirm the award.

**{¶8}** H.C. Nutting's motion to vacate centered upon the following provisions in the parties' contract:

6. LIMITATIONS ON LIABILITY. CLIENT AND CONSULTANT HAVE EVALUATED THE RISKS AND REWARDS ASSOCIATED WITH THIS PROJECT, INCLUDING CONSULTANT'S FEE RELATIVE TO THE RISKS ASSUMED, AND AGREE TO ALLOCATE CERTAIN OF THE RISKS SO, TO THE FULLEST EXTENT PERMITTED BY LAW, THE TOTAL AGGREGATE LIABILITY OF CONSULTANT (AND ITS RELATED CORPORATIONS AND EMPLOYEES) TO CLIENT AND THIRD PARTIES GRANTED RELIANCE IS LIMITED TO THE GREATER OF $25,000 OR ITS FEE, FOR ANY AND ALL INJURIES, DAMAGES, CLAIMS, LOSES OR EXPENSES (INCLUDING ATTORNEY AND EXPERT FEES) ARISING OUT OF CONSULTANT'S SERVICES OR THIS AGREEMENT REGARDLESS OF CAUSE(S) OR THE THEORY OF LIABILITY, INCLUDING NEGLIGENCE, INDEMNITY, OR OTHER RECOVERY. THIS LIMITATION SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER CONSULTANT'S COMMERCIAL GENERAL LIABILITY POLICY.

10. CONSEQUENTIAL DAMAGES. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR *LOSS OF PROFITS OR REVENUE*; LOSS OF USE OR OPPORTUNITY; LOSS OF GOOD WILL; COST OF SUBSTITUTE FACILITIES, GOODS,

OR SERVICES; COST OF CAPITAL; OR FOR ANY SPECIAL, *CONSEQUENTIAL*, INDIRECT, PUNITIVE, OR EXEMPLARY DAMAGES.

(Emphasis added.)

{¶9} The trial court held that because the parties' contract was silent as to the award of attorney fees, it could not say that the arbitrator had exceeded his authority in awarding Midland attorney fees. It also held that "because the ultimate amount awarded was less than the contractual limitation it drew its essence from the parties' contract." The trial court held, however, that the arbitrator had exceeded his authority by awarding consequential damages when they were expressly prohibited by the parties' contract. As a result, it vacated the arbitrator's award. *See H.C. Nutting Co. v. Midland Atlantic Dev. Co., LLC*, Hamilton C.P. No. A-1208064, 2013 Ohio Misc. LEXIS 10, *8-9 (Feb. 20, 2013). Midland now appeals.

### III. Midland's Appeal

{¶10} In a single assignment of error, Midland argues the trial court erred in vacating the arbitration award in its entirety on the basis that the arbitrator's award of consequential damages directly conflicted with an express term of the parties' contract, and therefore, the award did not draw its essence from the parties' agreement. We review a trial court's decision to vacate an arbitration award under a de novo standard of review. *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 131 Ohio App.3d 751, 723 N.E.2d 645, (1st Dist.1998).

{¶11} Judicial review of arbitration awards is narrowly circumscribed under R.C. 2711.10. *Id.* R.C. 2711.10 provides four grounds for vacating an arbitrator's award. The trial court vacated the arbitration award in this case on the fourth ground, which provides, "the court of common pleas shall make an order vacating

5

the award upon the application of any party to the arbitration if: * * *(D) The arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D).

{¶12}   Under R.C. 2711.10, an error in law or fact by an arbitrator does not provide a basis for vacating the award. *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001). Nor will an ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator exceeded his authority, provide a sufficient basis for vacating the award, so long as the award draws its essence from the parties' agreement. *Goodyear Tire & Rubber Co. v. Local Union 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 330 N.E.2d 703 (1975), paragraph one of the syllabus.

{¶13}   An arbitrator's authority, however, is limited to the authority granted under the terms of the parties' agreement. *Ohio Office of Collective Bargaining v. Civil Serv. Emp. Assn. Local 11 AFSCME*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991).

> An arbitrator exceeds his authority if the award does not "draw its essence" from the agreement at issue. Under the essence test, an award must be confirmed "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." In contrast, an arbitrator's award departs from the essence of the parties' agreement when (1) it conflicts with the express terms of the agreement or (2) it lacks rational support or cannot be rationally derived from the agreement's terms.

*Amalgamated Transit Union, Local 627 v. Southwest Ohio Regional Transit Auth.*, 190 Ohio App.3d 679, 2010-Ohio-5494, 943 N.E.2d 1075, ¶ 8 (1st Dist.).

{¶14} In *State Farm Mut. v. Blevins*, 49 Ohio St.3d 165, 551 N.E.2d 955 (1990), the Ohio Supreme Court vacated an arbitration award where it was apparent on the face of the award that a portion of the award was for punitive damages, when the parties' contract did not expressly provide for them. Similarly, in *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 183, 572 N.E.2d 71, the Ohio Supreme Court vacated an arbitration award where the arbitrator had exceeded his authority under a collective-bargaining agreement by ignoring the agreement's plain meaning, and created, in effect, a contract of his own, rather than applying the contract the parties had agreed upon. Likewise, in *Amalgamated Transit Union, Local 627*, 190 Ohio App.3d 679, 2010-Ohio-5494, 943 N.E.2d 1075, at ¶ 9-13, this court vacated an arbitration award on the specific basis that the arbitrator had exceeded his authority where his arbitration award conflicted with the express terms of the parties' agreement on the resolution of grievances.

{¶15} Here, Midland does not dispute that section 10 of the parties' contract expressly provides that the parties shall not be liable to each other for consequential damages and directly includes "loss of profits or revenues" in the scope of damages that are prohibited. Nor does it dispute that the arbitrator included lost revenues in its calculation of damages. Rather, it argues that because the arbitrator only awarded $256,737 in damages, this court cannot "assume" the arbitrator's award contained any lost profits.

{¶16} Here, the arbitrator expressly stated that he was awarding Midland $61,621.44 in "lost revenue." Thus, the plain language of the arbitrator's award when read as a whole included "loss of revenues."

{¶17} Midland argues that the arbitrator could have awarded consequential damages because he might have found that H.C. Nutting was grossly negligent and that section 10 was inapplicable. But there is no such analysis to this effect in the arbitrator's award. The arbitrator, moreover, did not discuss any contract language in or provide any reasoning for his award. Furthermore, the record does not contain any of the parties' filings before the arbitrator. Thus, we do not know the basis on which the parties' asked the arbitrator to make his award.

{¶18} Had the arbitrator discussed the contract language or provided some basis for the award, his decision might have at least rested upon an interpretation of the parties' contract. In the absence of some evidence that he "was dispensing his own brand of justice," we would be obliged to confirm the award, even if we disagreed with his reasoning and conclusion. *See Goodyear Tire & Rubber Co.*, 42 Ohio St.2d at 519, 330 N.E.2d 703, quoting *United Steel Workers of Am. v. Ent. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Here, however, the arbitrator failed to discuss the probative terms of the contract and offered no clear basis for how he construed the contract. Without such consideration, and with an award, which on its face awards Midland consequential damages, damages which are expressly precluded by the parties' contract, we cannot conclude that the award was based upon the four corners of the contract or that it drew its essence from the parties' agreement.

{¶19} This court understands that this opinion might cause another arbitration to be held increasing dispute resolution costs, the very costs which arbitration is designed to lessen. But because the arbitrator included consequential damages in his calculation, which were expressly excluded by the parties' contract, we are constrained to find that the trial court properly vacated the award. We, therefore, overrule Midland's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER, P.J**, concurs.
**DEWINE, J.** dissents.

**DEWINE, J.,** dissenting.

{¶20} The parties in this case bargained to have their disputes settled by an arbitrator. Because I find no reason in the record to disturb that bargain, I respectfully dissent.

{¶21} Midland and the Trustee ("Midland") filed their demand for arbitration against two entities: Reece Campbell and H.C. Nutting. After the arbitration had been commenced, but prior to the arbitration hearing, Midland settled with Reece Campbell for $180,000. In addition, before the initiation of arbitration, Midland settled with its insurance carrier for $340,000.

{¶22} The arbitrator calculated his award in a two-step process. First, he went through each of Midland's requested areas of damage and made an "above the line" calculation of $776,767.36. He then subtracted the $520,000 paid by Reece Campbell and the insurance carrier to reach a "below the line" total of $256,767.36. The arbitrator concluded: "Accordingly, I award as follows: RESPONDENT shall pay CLAIMANTS the sum of $256,767.36."

{¶23} Because the above-the-line calculation included $61,621.44 in "lost revenues," the majority determines that the arbitrator violated the provision in the contract between Midland and H.C. Nutting excluding consequential damages. As a result, it concludes that the arbitrator exceeded his authority, and that the entire award must be vacated.

{¶24} I cannot so easily jump to such a conclusion. The "award" in this case was $256,767.36. Setting aside the disputed consequential damages, the arbitrator still found that there were $715,145.92 in damages for which H.C. Nutting could have

been responsible. Thus, the amount "awarded" was well within the scope of permissible damages under the contract.

{¶25} The question is how we look at the offsets from the two settlements. One quite reasonable way to look at the award is that the consequential-damage portion was covered by the settlement funds. After all, there is nothing in the record to suggest that there was any limitation that would prohibit allocation of the insurance or Reece Campbell settlement to consequential damages. Under such a construction, the arbitrator's award was well within his authority.

{¶26} The majority's reading—which assumes that a portion of $256,767.36 awarded from H.C. Nutting was allocated to consequential damages rather than other damage items—is not implausible. But it is at odds with the construction that we have been directed to give arbitration awards. We have been instructed that "[a] mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence" from the contract. *Goodyear Tire & Rubber Co. v. Local Union No. 200*, 42 Ohio St.2d 516, 520, 330 N.E.2d 703 (1975), paragraph one of the syllabus. Rather, we "must be sensitive to upholding an arbitrator's award whenever it is possible to do so." *Hillsboro v. Fraternal Order of Police*, 52 Ohio St.3d 174, 178, 556 N.E.2d 1186 (1990).

{¶27} The majority criticizes the arbitrator for "fail[ing] to discuss the probative terms of the contract" and for "offer[ing] no clear basis for how he construed the contract." But "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of Am. v. Ent. Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Our role is not to test the legal soundness of the arbitrator's logic, but simply to ensure he doesn't exceed his

powers. Where, as here, an award is susceptible to a construction that is within the arbitrator's authority, we are bound to uphold the award.

{¶28} An award is within the arbitrator's authority as long as it draws its essence from the contract. To draw its essence from the contract, there simply must be "a rational nexus" between the contract and the award. *Southwest Ohio Regional Transit Auth. v. Amalgated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001). I find such a nexus in this case, but my colleagues see it differently. So, I dissent.

Please note:

The court has recorded its own entry this date.