[Cite as *Mt. Healthy v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 2017-Ohio-9117.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF MT. HEALTHY, | : | APPEAL NO. C-170072 |
| | | TRIAL NO. A-1605180 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| FRATERNAL ORDER OF POLICE, | : | |
| OHIO LABOR COUNCIL, INC., | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 20, 2017

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere*, *Scott A. Sollmann* and *Jonathan T. Deters*, for Plaintiff-Appellee,

*Tonya M. Sapp* and *Gwen Callender*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}     The Fraternal Order of Police, Ohio Labor Council, Inc., ("FOP") has appealed from the trial court's entry vacating an arbitration award that had been entered in its favor against the city of Mt. Healthy.

{¶2}     On February 16, 2014, Mt. Healthy hired Antwan Sparks as a part-time police officer.  Pursuant to the collective bargaining agreement ("CBA") entered into between the FOP on behalf of part-time patrolmen and Mt. Healthy, all newly hired part-time employees were subject to a one-year probationary period.

{¶3}     On June 30, 2014, Sparks was injured in the line of duty and was assigned to light duty.  He returned to duty on August 2, 2014, but was again assigned to light duty on September 22, 2014, where he remained until April 22, 2015.  Because of the amount of time that Sparks had spent on light duty, Mt. Healthy Police Chief Vincent Demasi and City Manager Bill Kocher determined that they could not adequately evaluate Sparks's performance and that his probationary period needed to be extended.  On January 13, 2015, Kocher spoke with the FOP staff representative regarding extension of Sparks's probationary period.  The union representative agreed to the extension.  That same day, Demasi delivered a letter to Sparks notifying him about the extension of the probationary period.  Because he had not returned to duty, Mt. Healthy did not give him an end date to his probationary period.

{¶4}     Approximately four months later, on May 14, 2015, Demasi gave Sparks a second letter stating that his probationary period was extended until December 4, 2015.  After receiving this letter, Sparks filed a grievance against Mt. Healthy, which proceeded to arbitration.  On behalf of Sparks, the FOP argued that

the extension of Sparks's probationary period violated the terms of the CBA. The arbitrator did not reach the merits of this argument, but rather sustained Sparks's grievance after finding that the FOP and Mt. Healthy could not extend the probationary period without obtaining consent from Sparks. After concluding that Sparks had successfully completed his probationary period—one year without any extension—the arbitrator ordered that Sparks be returned to duty as a part-time officer.

{¶5}   Mt. Healthy filed a motion to vacate the arbitrator's award, arguing that the arbitrator had exceeded his powers and had deviated from the essence of the CBA. The FOP filed a memorandum in opposition and requested that the award be confirmed. The trial court granted Mt. Healthy's motion to vacate.[1]

{¶6}   The FOP has appealed the trial court's entry, arguing in four assignments of error that the trial court erred by: (1) determining that the arbitrator exceeded his powers; (2) determining that the arbitrator imperfectly performed his duties; (3) misapplying the test for overturning an arbitrator's award; and (4) failing to confirm the arbitration award. Because these arguments are related, we address them together.

{¶7}   Arbitrators have great latitude in issuing a decision, as long as they act within the scope of the contract. *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 6. Pursuant to R.C. 2711.10, a trial court may

---

[1] Mt. Healthy had argued to the arbitrator that Sparks's grievance was not timely filed. Relying on a continuing-violation theory, the arbitrator concluded that the grievance had been timely filed, and he then proceeded to address the issue concerning the extension of Sparks's probation. In its motion to vacate the arbitrator's award, Mt. Healthy challenged both the arbitrator's findings that the grievance had been timely filed and that Sparks's consent was needed before the probationary period could be extended. While the trial court granted the motion to vacate, it did not specify on which ground its decision was based. In this appeal, we find that the FOP's assignments of error solely challenge the extension of Sparks's probationary period, and not the timeliness of the grievance.

vacate an arbitrator's award only under very limited circumstances, including when the arbitrator has exceeded her or his power. R.C. 2711.10(D). Arbitrators exceed their power when they go beyond their contractual authority to craft a remedy under the law. *Falfas* at ¶ 7. When an award "draws its essence" from the parties' contract, an arbitrator has acted within her or his authority to craft an award. *Id.* But an arbitrator's award departs from the essence of the contract when "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Id.*, quoting *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

{¶8} Following our review of the record, we hold that the arbitrator's award, based on his finding that the FOP representative and Mt. Healthy could not extend Sparks's probationary period without his personal consent, did not draw its essence from the terms of the CBA. Section 13.7 of the CBA provides that the arbitrator could not make any decision "[c]ontrary to, or inconsistent with, or modifying or varying in any way the terms of this Agreement or applicable laws." Section 1.1 of the CBA provides that the purpose of the agreement is for Mt. Healthy and the FOP, on behalf of the part-time patrolmen, to set forth "the full and complete understandings and agreements between the parties governing wages, hours, terms and conditions of employment for those employees included in the bargaining unit." And section 3.1 of the CBA provides that "[t]he Employer recognizes the Fraternal Order of Police, Ohio Labor Council, Inc. as the sole and exclusive representative for all part-time employees in the bargaining unit."

{¶9} The arbitrator's conclusion that the probationary period could not be extended without Sparks's personal consent conflicted with both applicable law and sections 1.1 and 3.1 of the CBA. Under the terms of the CBA, the FOP had sole and exclusive authority to represent all part-time patrolmen in matters concerning the terms and conditions of employment. This included the authority to agree to an extension of the probationary period. The FOP was granted the authority to act on behalf of its members.

{¶10} Moreover, the arbitrator's decision was contrary to law. Under agency principles, the union representative, as the "exclusive representative for all part-time employees," acted as Sparks's agent and had the authority to agree to an extension of the probationary period without Sparks's personal consent. *See Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608, 590 N.E.2d 254 (1992) ("an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal").

{¶11} Because the arbitrator exceeded his power by fashioning an award that did not draw its essence from the CBA, the trial court did not err in granting Mt. Healthy's motion to vacate the arbitrator's award or in failing to grant the FOP's motion to confirm. The FOP's assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

MILLER, J., concurs separately.
ZAYAS, P.J., concurs in judgment only.

MILLER, J., concurring separately.

{¶12} I fully join the well-reasoned majority opinion. I write to state that when a union is the exclusive bargaining agent for a group of employees, it is

empowered to make decisions that adversely impact individual employees. "The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees. * * * The employee may disagree with many of the union decisions but is bound by them." *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 887 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).

{¶13} Here, the FOP was faced with a choice of agreeing to extend Sparks's probation period or seeing him terminated. It chose the former, keeping him employed. This decision bound Sparks, and is well within " 'the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.' " *Linton v. United Parcel Serv.*, 15 F.3d 1365, 1369-1370 (6th Cir.1994), quoting *Air Line Pilots Assn. v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). *See Vaca v. Sipes*, 386 U.S. 171, 186-187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ("The court is free to determine whether the employee is barred by the actions of his union representative * * * ."). Accordingly, Sparks's grievance is barred.

**Zayas, P.J.**, concurring in judgment only.

{¶14} I agree that the trial court's judgment should be affirmed, but I reach this result for a different reason. I note that our standard of review is de novo. *H.C. Nutting Co. v. Midland Atlantic Dev. Co., L.L.C.*, 2013-Ohio-5511, 5 N.E.3d 125, ¶ 10 (1st Dist.).

{¶15} Sparks was appointed as a voluntary auxiliary part-time police officer on January 13, 2014. On February 16, 2014, he was hired as a part-time police officer with the City of Mt. Healthy. Every part-time officer that joins the Mt. Healthy Police Department is subject to a probationary period of one year. While under the one-

year probationary period, a police officer can be terminated at any time and has no right to appeal the termination under the CBA. Accordingly, the extension of Sparks's probationary period, in effect also extended the period of time that he could be terminated without any right to appeal the termination under the CBA.

{¶16} Before turning to the issues at hand, it must first be recognized "that collective bargaining agreements are not like other agreements." *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 553, 104 S.Ct. 1188, 79 L.E.2d 482 (1984) (Brennan, J., concurring in part and dissenting in part).

> The collective bargaining agreement * * * is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * * When most parties enter into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability pre-exists the negotiations. *Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces.*

(Emphasis added.) *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578-580, 80 S.Ct. 1347, 4 L.E.2d 1409 (1960). Therefore, the representing union and the employer come to the table to bargain and the resulting agreement encompasses all of the terms the parties are to be governed by.

{¶17} These principles are embodied in section 1.2 of the CBA in this case: The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any matter or subject not removed by law or regulation from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of those rights and opportunities are set forth in the Agreement. The provisions of this Agreement constitute the entire Agreement between the parties, and all prior agreements, either oral or written, individual or collective, are hereby cancelled.

{¶18} The parties submitted two issues to the arbitrator. The first was whether "the grievance was filed on time to meet the requirements of the contract." The second was whether "the extension of the probationary period for [Sparks was] a violation of the contract." As to the first issue, the arbitrator found that even though Sparks first filed his grievance more than 45 days from his receipt 0f the January letter, his receipt of the May letter established a "continuing violation" of the CBA, making his May filing of the grievance timely. As to the second issue, the arbitrator found that the FOP and Mt. Healthy *could* extend the probationary period, but could *not* do so without Sparks's consent, and therefore ordered that Sparks be reinstated.

{¶19} The city moved the trial court to vacate the arbitrator's award, arguing that the arbitrator's rulings on both issues were in error. The trial court granted the city's motion and vacated the arbitration award in a February 13, 2017 entry. However, that entry did not specify which of the arbitrator's rulings was in error, or if both were in error. In its appellate brief, the FOP argues that the arbitrator's

decisions that the two probationary-extension letters constituted a continuing violation and that section 10.1 of the CBA could not be modified absent the consent of the affected employee, were both proper. Appellant's brief at 6, 9-10. Because both issues are addressed in the appellant's brief, I address each in turn.

{¶20} As the majority stated, an arbitrator's award can be vacated where "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D). The city's argument is that the arbitrator exceeded his powers and imperfectly executed them by "fail[ing] to limit his decision to the clear language of the agreement." I agree, and would hold that the arbitrator's decisions on both issues presented improperly modified the terms of the CBA.

{¶21} Section 13.7 of the CBA provides that "[t]he arbitrator shall limit his decisions strictly to the interpretation, application, or enforcement to the specific Articles and Sections of this Agreement," and that the arbitrator "shall be without power or authority to make any decision: 1) contrary to, or inconsistent with, or *modifying* or varying in any way the terms of this Agreement or applicable laws[.]" (Emphasis added.) *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 180, 572 N.E.2d 71 ("[An arbitrator] is confined to the interpretation and application of the collective bargaining agreement and * * * is without authority to disregard or modify plain and unambiguous provisions.").

{¶22} Regarding whether Sparks's grievance was timely filed, section 13.6 of the CBA provides that "[w]ithin seven (7) calendar days of the incident or knowledge of the incident, but in no case later than forty-five (45) from the actual fact, which gave rise to the grievance, the aggrieved employee shall notify in writing his

grievance with his Sergeant [sic] * * *." The city contends that the arbitrator exceeded his authority under the CBA by relying on a "continuing violation" theory to find that the grievance was timely filed. I agree. The CBA sets a clear and unambiguous period for filing a grievance, and does not allow for a "continuing violation." *See Fairfield v. Am. Fedn. of State, Cty., and Mun. Emps., Ohio Council 8*, 12th Dist. Butler No. CA2007-11-267, 2008-Ohio-3891, ¶ 15 ("The arbitrator's 'continuing violation' determination did not comport with, and in fact defeated, the plain and unambiguous three-day time limitation upon grievances.").

{¶23} However, I would find that Sparks filed his grievance within the period provided in the CBA, because the "actual fact, which gave rise to the grievance" did not occur until the city's May letter. While the January letter informed Sparks that his probationary period would be extended, it did not provide an end date for the extension. Sparks was not informed of any final decision regarding the extension until the May letter, and he filed his grievance within seven days of receiving this letter and the onset of the extension of the probationary period. I would hold that the violation did not occur until this final decision was issued, and therefore that the grievance was timely filed.

{¶24} Regarding whether a part-time officer's probationary period could be extended, section 10.1 of the CBA provides that "the probationary period *shall* begin the first day for which the employee receives compensation from the Employer following their Field Training Program and *shall* continue for a period of one calendar year." (Emphasis added.) This language is plain and unambiguous, and makes the one-year term of a probationary period mandatory. *Independence Fire Fighters Assn. v. City of Independence*, 121 Ohio App.3d 716, 722, 700 N.E.2d 909

(8th Dist.1997), quoting *Detroit Coal v. Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580 (6th Cir.1979) ("Terms in a collective bargaining agreement shall be given 'their ordinary meaning in the absence of evidence indicating that the parties to the contract intended to expand or otherwise deviate from that meaning.' "); *Tonkens v. Tonkens*, 1st Dist. Hamilton No. C-76645, 1977 WL 199789, *2 (Sept. 14, 1977) (referring to "shall" as meaning "mandatory" in the context of contract interpretation); *Coseriu v. Coseriu*, 8th Dist. Cuyahoga No. 74308, 1999 WL 754503, *1 (Sept. 23, 1999) (same). The parties and the arbitrator agreed that there is no provision in the collective bargaining agreement allowing for an extension of a probationary period.

{¶25} Furthermore, under section 23.1 of the CBA, if either party seeks to modify the agreement, they must provide notice of their intent "no earlier [than] one hundred and twenty (120) and no later than sixty (60) days prior to the expiration date." *See* R.C. 4117.14(B). Therefore, any changes to the agreement may only take effect following the agreement's expiration, as section 23.2 provides: "All sections of this Agreement shall remain in full force and effect until a new Agreement is reached." This language is plain and unambiguous, and mandates that modifications must be negotiated no sooner than 120 days prior to the expiration date. This is reinforced by section 23.3 of the CBA, which provides that the CBA may be reopened "for the *sole* purpose of negotiating a physical fitness program during the term of the agreement."

{¶26} In the arbitrator's words, the question was whether the union and the city can "ma[ke] an exception to clear and unambiguous language in the CBA for one individual." The arbitrator himself in addressing this pivotal question stated that he

11

"searched through numerous classics in labor arbitration to help shed light on th[e] question" of whether "the Employer and the Union [are] able to alter the terms of their Contract for an individual member without the consent of that member." He ultimately turned to a law review article "entitled 'Individual Rights in Collective Agreements and Arbitration' by Clyde W. Summers of Yale Law School." 37 N.Y.U.L. Rev. 362 (1962). This article was the sole basis for the arbitrator's determination that the union and employer may make exceptions to a "clear and unambiguous" provision of a collective bargaining agreement for one employee where they have the consent of the affected employee.

{¶27} However, this article merely argues that individuals should have standing to "enforce substantive provisions in a collective agreement without being subject to the union's veto." *Id.* at 380. It does not stand for the proposition that an individual can consent to a one-time exception to a provision in a collective bargaining agreement. I am aware of no authority that would allow such an exception, and the article even recognizes that such exceptions are prohibited: "the individual employee * * * cannot bargain individually to vary the contract or set it aside; he can only demand compliance with its terms." *Id.* at 396. Moreover, if such an individual accommodation were allowed, this would defeat collective bargaining's purpose of having the employer-employee relationship "governed by an agreed-upon rule of law," and instead "leav[e] each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces." *United Steelworkers of Am.*, 363 U.S. at 580, 80 S.Ct. 1347, 4 L.E.2d 1409.

{¶28} The majority interprets section 3.1 of the CBA, which recognizes the FOP as the "sole and exclusive representative for all part-time employees," as establishing that the union was Sparks's "agent" in the traditional legal sense of that term, and therefore that the union representative had authority to make decisions that would bind Sparks as the "principal" on *any* employment matters.

{¶29} However, this interpretation is inconsistent with the role of an "exclusive representative" in the context of labor relations, which is narrower than the role of an agent acting on behalf of a principal. Section 3.1 of the CBA provides that the FOP is "the sole and exclusive representative for all part-time employees * * * *as set forth in the certification issued by the Ohio State Employment Relations Board*." (Emphasis added.) R.C. 4117.05 explains this "certification" process, and a review of R.C. Chapter 4117 as a whole clarifies that the employees' "exclusive representative" is their representative for the purposes of *collective bargaining*. *See, e.g.*, R.C. 4117.01(E); R.C. 4117.04; R.C. 4117.05. Collective bargaining is the "process by which an employer bargains with its employees *collectively* through the accredited representative of the employees regarding wages, hours, and working conditions." 51 Corpus Juris Secundum, Labor Relations, Section 192 (2017). *See* R.C. 4117.01(G).

{¶30} Thus, to the extent that an "exclusive representative" in a collective bargaining agreement is an "agent" in the traditional legal sense, it is only as an agent for the entire employee unit in negotiations with the employer, not an agent for each individual employee in every matter related to his or her employment. The authority cited by Judge Miller in his separate concurrence, *Allis-Chalmers,* 388 U.S. 175, 887 S.Ct. 2001, 18 L.Ed.2d 1123, supports this proposition. While *Allis-*

*Chalmers* does state that "[t]he employee may disagree with many of the union decisions but is bound by them," the Court was in actuality discussing this principle in the context of collective bargaining:

> National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. * * * Thus only the union may contract the employee's terms and conditions of employment, and provisions for processing his grievances; the union may even bargain away his right to strike during the contract term, and his right to refuse to cross a lawful picket line. The employee may disagree with many of the union decisions but is bound by them. The majority-rule concept is today unquestionably at the center of our federal labor policy. The complete satisfaction of all who are represented is hardly to be expected.

*Id.* at 180.

{¶31} Accordingly, the arbitrator was correct in finding that section 10.1 of the CBA was clear and unambiguous, and was also correct in finding that the CBA has no provision allowing for a probationary extension. Once the arbitrator determined that there was no ambiguity, he should have enforced the plain language of the agreement. "If the wording of [an] agreement is plain and unambiguous, then no other steps of contract construction can be taken, and the document must be applied as written." *Schraff & King Co., L.P.A. v. Casey*, 2012-Ohio-5829, 983 N.E.2d 882, ¶ 23 (11th Dist.). The arbitrator "may construe ambiguous language,"

but "he is without authority to disregard or modify plain and unambiguous provisions." *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 180, 572 N.E.2d 71. The arbitrator therefore erred in seeking authority outside of the CBA itself to allow for a probationary period extension, and in finding that the express terms of the CBA could be modified with the consent of the employee.

{¶32} The issue before this court is whether the arbitrator exceeded his authority or imperfectly performed his duties. We must find that he did. The arbitrator went beyond the terms of sections 10.1, 13.6, and 13.7, and article 23 of the CBA in applying a "continuing violation" theory, and in finding that an exception could be made for one employee with that employee's consent. His award therefore "conflict[ed] with the express terms" of the CBA, and the trial court's judgment vacating the arbitrator's award was correct.

Please note:

The court has recorded its own entry on the date of the release of this opinion.